COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| D.F. | § | No. 08-12-00068-CV |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | 65th Judicial District Court |
| TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, | § | of El Paso County, Texas |
| Appellee. | § | (TC#2010CM6140) |
| | § | |

## **O P I N I O N**

D.F. [1] ("D.F." or "Appellant") appeals the termination of her parental rights as to K.J.F., a minor child.[2] D.F. brings three issues: (1) the trial court erred in not requiring evidence of abuse or neglect as an implied element of the termination grounds under Texas Family Code Section 161.001(1)(O); (2) the evidence was legally insufficient to support the termination on best interest grounds where D.F. had completed a significant portion of the court-ordered service plan; and (3) the evidence was factually insufficient to support termination of parental rights on best interest grounds relating to several factors. We affirm.

### **BACKGROUND**

D.F. is the biological mother of K.J.F., a minor child born on April 8, 2009, and H.S.F., a minor child not a subject of this suit. D.F. previously resided in California with K.J.F. and H.S.F. She also lived with her domestic partner T.W., and T.W.'s two children. During the several years

---

[1] This opinion shall refer to the subject child, and any other related party, by their initials.

[2] Appeals from a judgment terminating parental rights are accelerated. *See* TEX.R.APP.P. 28.4. The Texas Supreme Court has determined that an appellate court should dispose of these appeals within 180 days after the notice of the appeal is filed. TEX.R.JUD'L ADMIN 6.2(a).

they lived with their children, D.F. and T.W. did not have a stable lifestyle and moved frequently. In June of 2010, after Child Protective Services in California became involved with the children, T.W.'s mother, S.B, went to California and brought all four children to El Paso to live with her. D.F. and T.W. had asked S.B. to take care of the children because of their unstable situation in California. D.F., who was homeless and unemployed, remained in California with T.W. when the children came to El Paso with S.B.

In July of 2010, S.B. had a heart attack and placed the four children, including K.J.F., in the Child Crisis Center of El Paso ("Child Crisis Center"). When the Texas Department of Family and Protective Services ("Department") became involved, it contacted S.B. to determine whether she would take the children back into her care. Ultimately, the Department removed the children from the Child Crisis Center. At the time they were removed, all of the children were in need of medical attention.

Additional family history details are found in an affidavit, attached to the original petition. According to the affidavit, prepared and signed by a Department investigator, the Department received a report on August 6, 2010, alleging neglectful supervision of K.J.F. and H.S.F. by D.F. The report indicated that: (1) the children were in El Paso with caretakers who were no longer able to care for them; (2) D.F. was homeless in California and had not had contact with her children; (3) when K.J.F. arrived at the Child Crisis Center, there were what appeared to be healing blisters on the bottom of K.J.F.'s feet, which were in different stages of healing although the Child Crisis Center staff noted that the blisters were much worse when K.J.F. was first admitted to the facility; (4) K.J.F. had previously been sick with an infection in both ears and an upper respiratory infection but was doing well; (5) S.B. had incurred several thousand dollars in medical expenses

2

for the children because D.F. and T.W. did not have insurance to cover K.J.F.'s medical costs; and (6) S.B. was asked to pick up the children from California by T.W. before Child Protective Services in California "took them away from her." The affidavit indicates that S.B. initially felt that she and her husband could care for the children. However on August 24, 2010, S.B. determined that they would not be able to do so because of financial hardships. They did not agree to release the children from the Child Crisis Center. That same day, the Department investigator spoke to D.F., who indicated that she wanted to reunify with her children at the Rescue Mission in San Diego, California. D.F. indicated that she was going to be able to stay with her children in a long-term program at that facility and that while D.F. was not employed at the time, she was seeking work.

On August 30, 2010, the Department investigator learned that there was actually a two-month waiting list for admission to the long-term program in California and that the only program then available to D.F required her and the children to be out of the facility during daytime hours. The following day the Child Crisis Center advised the Department that: (1) the children would need to be discharged from the facility as the children had medical needs and no insurance; and (2) neither D.F., S.B., or S.B.'s husband were returning the Child Crisis Center's calls, nor were they checking in with the children as had been requested. The Department was advised later that day that neither D.F. nor T.W. were returning calls made to them by the Rescue Mission nor did they show any concern or urgency in reunifying with their children.

On September 1, 2010, the Department filed its Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship. The

court entered an Order for Protection of a Child in an Emergency[3] that same day pursuant to Family Code section 262.102.   That order named the Department as K.J.F.'s temporary managing conservator and included a finding of "an immediate danger to the physical health or safety of [K.J.F.] or [that K.J.F. has] been the victim[] of neglect or sexual abuse and that continuation in the home would be contrary to [K.J.F.]'s welfare."

The trial court conducted a full adversary hearing under Chapter 262 of the Texas Family Code on September 14, 2010 and subsequently entered temporary orders for the care and custody of K.J.F.   The Temporary Order Issued After Show Cause Hearing required D.F. to "comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit."   A section of the order, redacted for admission at trial, indicated that "there is sufficient evidence to satisfy a person of ordinary prudence and caution that:   [A]llowing the children to remain in the home would be contrary to the children's welfare."   Furthermore, in the "Finding and Notice" section of the order which precedes the "Compliance with Service Plan" section (also redacted at trial), the Temporary Order states:

> The court finds and hereby notifies the parents that each of the actions required of them below are necessary to obtain the return of the children, and failure to fully comply with these orders may result in the restriction or termination of parental rights.

Department case worker Tanya Berry's ("Ms. Berry") first contact with D.F. was via telephone in September of 2010.   D.F.'s initial plan was to remain in California.   As a result, the Department prepared a Family Service Plan ("Service Plan") pursuant to Section 262.103 of the Family Code and filed it with the court on October 26, 2010.   The record indicates that a Service Plan meeting took place over the phone on October 23, 2010, that D.F. had no plans to come to

---

[3] The order appears in the Clerk's Record.

4

El Paso, and that a copy of the Service Plan would be mailed to her. Following a status hearing on October 28, 2010, the court issued a Status Hearing Order which approved the Service Plan and made it an order of the court. D.F. was ordered to take certain actions to either implement or comply with the Service Plan, including: (1) refraining from using any illegal substances or alcohol; (2) refraining from associating with individuals that used illegal substances or alcohol; (3) maintaining phone contact with K.J.F. at least twice a week; (4) obtaining and maintaining appropriate housing and providing proof of same to the Department case worker; (5) maintaining regular and consistent contact with the case worker by telephone no less than once per week; and (6) following any and all family service plans. The "Parent(s) Acknowledgement" section of the Service Plan indicated that D.F. was then in San Diego. D.F. did not appear for the status hearing or sign the order, however her appointed counsel did sign the order. Provisions similar or identical to those contained in the Status Hearing Order appear in the Service Plan.

D.F. and T.W. moved to El Paso in December of 2010, and D.F. met with Ms. Berry formally during that month at that meeting. At that meeting, Ms. Berry reviewed the Service Plan with D.F., who understood that the top priority was obtaining housing and employment. D.F. was initially living at the Rescue Mission and, approximately ninety days later, moved to the Opportunity Center. An amended Service Plan containing substantially identical terms was created when D.F. arrived in El Paso, with the only difference being that D.F. was to perform the Service Plan tasks in El Paso.

Ms. Berry advised D.F. that she needed to remain in contact with Ms. Berry. According to Ms. Berry, D.F. initially did very well, visiting K.J.F. weekly, at which time Ms. Berry met with D.F. In mid-July 2011, D.F. began having unsupervised visits with K.J.F. These visits were

5

scheduled at the same time as the visits between T.W. and her children. On her own accord, D.F. completed parenting classes and provided certification of her completion of the classes to the Department. D.F. also completed the psychological evaluation required by the Service Plan and Status Hearing Order.

The Department's initial permanency plan was reunification. However, around August of 2011, D.F. and T.W. separated. T.W. had been living with S.B. but D.F. was not allowed to stay with T.W. at S.B.'s home. During an unsupervised visitation, D.F. assaulted T.W. in front of the children, after which D.F.'s visits with K.J.F. reverted to supervised visitation.

Towards the end of October 2011, D.F.'s participation in the Service Plan went "completely south" and her visits with K.J.F. became less frequent. D.F. told Ms. Berry that the break-up with T.W. "set her on a downward-spiral mentally," and said that her attorney had advised her to stop having contact with K.J.F., because D.F. was "not mentally sound at that time." D.F. obtained services from El Paso Mental Health and Mental Retardation ("MHMR") where D.F. was diagnosed with depression and placed on medication. The court appointed a guardian *ad litem* for D.F. on November 22, 2011.

D.F. had difficulty complying with the Status Hearing Order and the Service Plan. D.F. submitted to a random drug test but admitted to Ms. Berry that she used marijuana on a few occasions in violation of the order and Service Plan. D.F. never completed a drug and alcohol assessment. D.F. failed to maintain the required phone contacts with K.J.F. and the Department. D.F. never obtained or maintained appropriate housing for either herself or K.J.F., and Ms. Berry testified that D.F. "never demonstrated" that she was "able to provide a stable environment" for K.J.F.

6

During most of the pendency of the case D.F. lived "off and on" at the Opportunity Center, while occasionally staying at friend's houses. D.F. was given information regarding Section 8 housing, but felt that she and T.W. would not qualify based on having two households and a prior eviction in Missouri. D.F. and T.W. once told Ms. Berry that they were going to get an apartment but never provided any supporting documentation. D.F. also told Ms. Berry that she planned on using her federal tax refund to secure an apartment and pay four months' rent in advance, but never followed through with her plan. D.F. never gave a clear response as to how the tax refund money was spent, telling Ms. Berry only that she and T.W. had a "nice birthday party" for one of T.W.'s children and the money was spent on the children. D.F. claimed to have been working at Albertson's Supermarket and as a caterer, but never provided documentation to the Department regarding these jobs.

Between October and December of 2011, Ms. Berry walked to the El Paso County Courthouse approximately once a week. Ms. Berry testified she saw D.F. in a plaza near the courthouse "almost daily," and D.F. appeared to be "having a good time," socializing with a group of people that appeared to be homeless. Mr. Berry saw D.F. socializing with this group from about nine in the morning until six in the evening and testified that the group's members moved back and forth between the plaza and a nearby bar. Ms. Berry testified that on a few occasions D.F. appeared to be intoxicated. On one occasion, Ms. Berry approached D.F. and asked if she was going to return to complete her services. D.F. responded "[Y]es, I'm coming back. I'm dealing with some issues," but D.F. did not seem engaged and did not ask about K.J.F or ask to visit K.J.F. Subsequently, D.F. did not contact Ms. Berry or inquire about K.J.F.

In November of 2011, D.F. informed Ms. Berry that she had been living behind the county

7

courthouse because she had been banned from the Opportunity Center. When Ms. Berry checked with the Opportunity Center, she was advised that D.F. was not banned. Ms. Berry arranged for D.F. to be seen at Aliviane, based on her admitted drug use, but D.F. failed to make an appointment with the staff at Aliviane.

The last time Ms. Berry saw D.F. was on January 13, 2012. At that time, D.F. had not contacted the Department or made any effort to visit K.J.F. for nearly a month and a half. D.F. then sought to resume her visits with K.J.F., having missed "quite a few visits prior to then." D.F. had visits with K.J.F. on January 6 and January 13, had good interactions with K.J.F. during the visits, and told Ms. Berry that she was feeling "much better." Following these visits, D.F. missed the last two scheduled visits before the trial and did not initiate contact with Ms. Berry again.

On January 30, 2012, a termination trial was held.[4] D.F. did not appear at the trial.[5] The only witness called at trial was Ms. Berry. Ms. Berry testified that termination of D.F.'s parental rights was in the best interests of K.J.F. because K.J.F. was two years old, had been "bounced around from being homeless in California, to coming to El Paso to going to the Child Crisis Center," and had "had a lot of inconsistencies in her life for being so young." Ms. Berry also testified about D.F.'s "lack of urgency" in wanting to get K.J.F. back and the numerous missed visits.

At the time of the trial, K.J.F. was living with a foster family who was interested in adopting her. According to Ms. Berry, K.J.F. had no medical or educational issues and appeared very bright and healthy with a very stable life in foster care, to which she had adjusted well.

---

[4] A jury was waived.

[5] Counsel for D.F. requested a continuance on the basis that she was unable to contact her client. The motion was denied by the court.

Ms. Berry testified that the Department's permanency goal was relative adoption, with a concurrent goal of adoption by K.J.F.'s foster parents. A home study was performed on D.F.'s mother but the results were unsatisfactory. The Department made attempts to contact D.F.'s sister to potentially initiate a home study, but the sister did not respond to the Department's inquiries. D.F. asked whether K.J.F. could be placed with S.B. and T.W.'s children, however Ms. Berry explained that the Department wished to initially look at blood relatives. She further explained that the Department was unsure if S.B. would pass a home study, and therefore was unable to guarantee S.B. as a placement.[6] Ms. Berry did advise that there was a possibility that K.J.F. could be placed with T.W.'s children.

Following the trial, the trial court found clear and convincing evidence to support a finding under Texas Family Code Section 161.001(1)(O). The trial court also found that termination of D.F.'s parental rights was in K.J.F.'s best interest and appointed the Department as sole managing conservator. D.F. timely appealed.

## DISCUSSION

D.F.'s first argument is that the trial court erred in failing to require, as an element of an "O" ground for termination, that there be evidence of abuse or neglect by a party in connection with the removal of the child, as this finding is an implied element under the Texas Family Code. D.F. argues that there was no evidence of "abuse or neglect" at either the initiation of the case or during the pendency of the case, although she acknowledged that while there may be "some evidence," it falls below the quantum of proof required.

Pursuant to the Texas Family Code:

> The court may order termination of the parent-child relationship if the court

---

[6] Ms. Berry advised D.F. of the likely denial of S.B. as a potential placement after the January 13 visitation with K.J.F.

9

finds by clear and convincing evidence:

. . .

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child . . . .

TEX.FAM.CODE ANN. § 161.001(O)(West Supp. 2012).

D.F. argues that because neither the Texas Supreme Court nor this Court has ever directly addressed this issue it constitutes an unsettled area of law. Accordingly, D.F. argues that because the trial court did not have discretion to evaluate whether this was an implied term of the statute, the law requires a *de novo* review by this Court, citing *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002) in support of her argument.

The Department agrees that neither this Court nor the Supreme Court has previously addressed the issue. However, in its brief, the Department argues that a plain reading of the statute supports the interpretation that the removal of a child for abuse or neglect is a required element of Section 161.001(1)(O) of the Texas Family Code.

We agree that a child's removal for "abuse or neglect" is a required element of Section 161.001(1)(O) and join a majority of other courts of appeal which have so held.[7] As a result, we

---

[7] *See In re S.N.,* 287 S.W.3d at 190; *In re A.A.A.*, 265 S.W.3d 507, 515 (Tex.App.--Houston [1st Dist.] 2008, pet. denied); *In re S.A.P.*, 169 S.W.3d 685, 705-06 (Tex.App.-- Waco 2005, no pet.); *In re M.N.,* No. 11-10-00129-CV, 2011 WL 917837, *3 (Tex.App.--Eastland Mar. 17, 2011, no pet.)(mem. op.); *In re M.L.J.*, No. 2-07-178-CV, 2008 WL 1932076, *5 (Tex.App.--Fort Worth May 1, 2008, pet denied)(mem. op.); *In re M.B.*, No. 07-04-0334-CV, 2004 WL 2867544, *2 (Tex.App.--Amarillo Dec. 14, 2004, no pet.)(mem. op.); *see also In re E.S.C.*, 287 S.W.3d 471, 475 (Tex.App.--Dallas 2009, pet. denied)(assuming without deciding that removal for "the abuse or neglect of the child" is an element of subsection 161.001(1)(O)); *L.Z. v. Texas Dept. of Family and Protective Servs.*, No. 03-12-00113-CV, 2012 WL 3629435, *8 (Tex.App.--Austin Aug. 23, 2012, no pet.)(following *E.S.C.* in assuming without deciding this issue).

must now determine whether the evidence is sufficient to support K.J.F.'s removal because of abuse or neglect. *See In re S.N.*, 287 S.W.3d 183, 190 (Tex.App.--Houston [14th Dist.] 2009, no pet.).

**Abuse or neglect**

D.F. argues that K.J.F. was not removed as a result of abuse or neglect at the hands of D.F. or her partner, T.W. As a result, the Department did not meet its burden because it failed to completely establish ground "O."[8] D.F. contends that the Department failed to prove or address whether the removal was for abuse or neglect, and that there was no evidence presented that D.F. was either abusive or neglectful towards K.J.F. in the circumstances leading up to K.J.F.'s removal. D.F. contends that there is no evidence supporting a finding of ground (O) because there is no evidence of abuse or neglect.

No-evidence allegations are reviewed under a legal sufficiency standard. *See In re J.F.C.*, 96 S.W.3d 256, 264-66 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support a termination finding, we look at all of the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction about the truth of the matter on which the Department bears the burden of proof. *M.C. v. Texas Dept. of Family and Protective Services*, 300 S.W.3d 305, 308 (Tex.App.--El Paso 2009, pet. denied), *citing In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 265-66. We assume the fact finder resolved any disputed facts in favor of its finding, if a reasonable fact finder could so do, and disregard all evidence that a reasonable fact finder could

---

[8] In her summary D.F. contends that: (1) there was insufficient evidence that she had specific knowledge of the tasks she was assigned to complete and the consequences of her failure to do so; (2) that there was "no evidence" of alleged abuse or neglect at the initiation or during the pendency of the case. Alternatively, she does admit that while there was "some evidence" it fell below the quantum of proof required.

11

have disbelieved or found incredible. *M.C.*, 300 S.W.3d at 308. We do not, however, disregard undisputed evidence that does not support the finding. *Id.*

In a factual sufficiency review we must give "due consideration" to any evidence the fact finder could reasonably have found to be clear and convincing. *Id.* We must consider the disputed evidence and determine whether a reasonable fact finder could have resolved that evidence in favor of the finding. *Id.* If the disputed evidence is so significant that a fact finder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

In either case, before parental rights can be terminated involuntarily, the trier of fact must find by clear and convincing evidence that: (1) the parent committed one of the statutory grounds found in Section 161.001(1); and (2) termination is in the best interest of the child. *Id.* at 308-09; *In re A.B.*, 269 S.W.3d 120, 126 (Tex.App.--El Paso 2008, no pet.). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX.FAM.CODE ANN. § 101.007 (West 2008). This heightened burden of proof results in a heightened standard of review. *In re S.N.*, 287 S.W.3d at 187.

D.F. argues that the Department did not establish that K.J.F. was removed for abuse or neglect, either by D.F. or T.W. D.F. initially argues that K.J.F. was not "removed" from her care, but that D.F. voluntarily made the decision to place K.J.F. and T.W.'s children with S.B. Following her heart attack, S.B. placed the children at the Child Crisis Center, and the Department removed the children from the Child Crisis Center after S.B. indicated she was unable to care for them. D.F. contends that no evidence was presented that D.F. was abusive or neglectful in the

12

events that led to the removal.   The Department asserts that D.F.'s argument essentially requires that K.J.F. have been physically removed from D.F.'s care and that the Texas Family Code has no such requirement.

Texas does not apply such a restrictive interpretation to Section 161.001(1)(O).   Children are removed from their parents under Chapter 262 for the abuse or neglect of a child where the children may have been physically in the care of a relative, a medical or social services institution, or the Department.   *See, e.g. In re A.A.A.*, 265 S.W.3d 507, 516 (Tex.App.--Houston [1st Dist.] 2008, pet. denied)(holding that child in care of a shelter at the time of removal was removed from the parent under Chapter 262 for abuse or neglect).   At the time of her removal, K.J.F. was residing at the Child Crisis Center.   While she was physically removed from that facility, we find for purposes of Chapter 262, she was removed from her parent.   *See In re A.A.A.*, 265 S.W.3d at 516.

D.F. next asserts that there was no evidence establishing that she was abusive or neglectful of K.J.F. in the events that led to the removal, and cites *In re S.A.P.*, 169 S.W.3d 685 (Tex.App.--Waco 2005, no pet.) to support her position.   We find *In re S.A.P.* distinguishable from the instant case.   In *In re S.A.P.*, the Department removed a child solely on the risk of abuse or neglect on the basis that the parents had previously had their parental rights to other children terminated.   *In re S.A.P.*, 169 S.W.3d at 698.   In holding that there was no evidence of removal for "abuse or neglect," the court noted that the case worker "unequivocally testified that S.A.P. was not removed for abuse or neglect," that S.A.P. was not abused or neglected by his parents, and that S.A.P. was removed only because of the risk due to his parents' prior history.   *Id.* at 705-6. Here, Ms. Berry testified that:   (1) K.J.F. never had a stable environment as D.F. "moved around a

13

lot" and did not have a stable residence after she left Missouri where K.J.F. was born; (2) California Child Protective Services had become involved with the family; (3) because of this involvement, D.F. voluntarily placed K.J.F. with S.B. in El Paso; (4) a month later S.B. placed K.J.F. at the Child Crisis Center because she could no longer care for the children due to her health; (5) the Department became involved at the request of the Child Crisis Center as K.J.F. was not retrieved by anyone after being left at the Child Crisis Center; (6) the Department discovered that K.J.F. needed medical attention; and (7) at the time of K.J.F.'s removal, D.F. was homeless in California.

Whether a child is removed for "abuse or neglect" is determined on a case-by-case basis. *In re A.A.A.*, 265 S.W.3d at 515. We note several similarities between the instant case and *In re A.A.A.* In *In re A.A.A.*, the court found that the Department had not established neglect based on evidence that the parent left a child in a shelter while the parent went to commit a crime. *In re A.A.A.*, 265 S.W.3d at 515-16. On the other hand, the court did find that the child was removed for neglect, as the evidence showed that once the parent was released from police custody she made no effort to find out the child's location or condition, or leave a way for either the Department or the shelter to contact her. *Id.* at 516. The court found that the child had been removed from the parent pursuant to Section 262.104 (which permits emergency removal without a court order). *Id.* The trial court also issued temporary orders naming the Department as the child's temporary sole managing conservator, finding, *inter alia*, that "'there is a continuing danger to the physical health or safety of the child if returned to the parent.'" *Id.* Here, while the child was not removed pursuant 262.104, the undisputed evidence is that: (1) while K.J.F. was at the shelter, D.F. made no efforts to contact K.J.F., even though she had been asked to do so; (2) an

14

emergency hearing was held, following which the trial court entered an order for protection of a child in an emergency which states that "there is an immediate danger to the physical health or safety of the children or the children have been the victims of neglect or sexual abuse and that continuation in the home would be contrary to the children's welfare;"[9] and (3) the order named the Department as the temporary sole managing conservator of K.J.F.

A reasonable trier of fact could have formed a firm belief or conviction about the truth of the matter on which the Department bore the burden of proof. Specifically, that based on the evidence presented, K.J.F. had been neglected by D.F. given D.F.'s unstable living conditions in California and El Paso and the fact that D.F. left K.J.F. with S.B., an individual who had significant health problems. The evidence presented is legally and factually sufficient to support the trial court's finding that K.J.F. was removed from D.F. under Chapter 262 for abuse or neglect. Appellant's first issue is overruled.

**Awareness and completion of service plan**

D.F.'s second issue is that the evidence did not clearly demonstrate that D.F. was specifically aware of the existence of the Service Plan and the admonition that failing to complete all of the tasks assigned to her would result in the termination of her parental rights. D.F. argues that the evidence was legally insufficient to support termination where D.F. had completed a "significant portion" of the Service Plan. D.F. was not present at the Chapter 262 hearing and asserts that she did not meet with Ms. Berry until December of 2010 when D.F. moved to El Paso. D.F. also did not sign any orders. D.F. argues that as a result, she was unaware of the terms of the Service Plan or its consequences. Finally, D.F. argues that because she was not specifically

---

[9] Similar language is found in *In re S.N.*, where the trial court entered temporary orders finding, in part, that "'there was a danger to the physical health or safety of the children' and that 'there is a substantial risk of a continuing danger if the children are returned home.'" *In re S.N.*, 287 S.W.3d at 190.

aware of the existence of the plan, she was unaware that failure to complete the plan could result in termination of her parental rights.

Texas Family Code Section 263.103 discusses service plans and indicates that the child's parents and a Department representative shall discuss each term and condition of the plan before it is signed. *See* TEX.FAM.CODE ANN. § 263.103(a-1)(West Supp. 2012). If the Department determines that the parent is unable or unwilling to participate in the development of the plan, the Department may file the plan without the signature of the parent. *See* TEX.FAM.CODE ANN. § 263.103(c). Section 263.103(c) provides that the service plan takes effect when the Department "files the plan without the parents' signatures." TEX.FAM.CODE ANN. § 263.103(c). *See also In re T.T.F.*, 331 S.W.3d 461, 478 (Tex.App.--Fort Worth 2010, no pet.)(noting same).

We first review D.F.'s contention that she was unaware of the Service Plan. The Service Plan indicates that it was prepared over the phone with D.F. on October 23, 2010, and was filed with the court on October 26, 2010. The plan notes that the parents were not in the State of Texas and were unable to sign the plan. The Service Plan states that D.F. was "currently in San Diego, California" and that the plan would be mailed to her. The Department acted within its authority under the Texas Family Code to prepare and file the Service Plan. *See* TEX.FAM.CODE ANN. §§ 263.103(c) and (d). In addition, D.F. was aware of the plan, as it was prepared with her via telephone. D.F. also reviewed the Service Plan with Ms. Berry when D.F. arrived in El Paso. Pursuant to statute, the Service Plan took effect on October 26, 2010. Clearly, D.F. was aware of the requirements of the plan, thus accomplishing the statutory requirement of Section 263.103(a-1). D.F.'s contention that she was unaware of the plan and its terms is not supported by the record.

We next turn to D.F.'s contention that her completion of "a significant portion" of the services listed in the Service Plan was sufficient to challenge the determination that she failed to complete all services under the plan. D.F. was ordered to take certain actions to either implement or comply with the Service Plan, including that she: (1) refrain from using any illegal substances or alcohol; (2) refrain from associating with individuals who used illegal substances or alcohol; (3) maintain phone contact with K.J.F. at least twice a week; (4) obtain and maintain appropriate housing and provide proof of same to the Department case worker; (5) maintain regular and consistent contact with the case worker by telephone no less than once a week; and (6) follow any and all family service plans.

D.F. concedes that she did not obtain housing or employment, both of which were required under the terms of her Service Plan. D.F. also notes that it is undisputed that K.J.F. was in the custody of the Department for well over nine months. However, D.F. argues that she completed a significant portion of the services required under the plan, and that the evidence was legally insufficient to support the termination on best interest grounds as a result.

In addition to the failure to obtain housing or employment, D.F. admitted to Ms. Berry at a random drug test that she used marijuana on a few occasions. In addition, the evidence established that D.F. never completed a drug and alcohol assessment as required by the Service Plan, that she failed to maintain contact with K.J.F. at least twice a week, and that she did not maintain regular and consistent contact with Ms. Berry at least once a week. Ms. Berry noted that D.F. associated with a group of people who appeared to be homeless and who spent most of the day in a plaza near the courthouse, making occasional trips to a local bar, and that D.F. often appeared to be intoxicated. This evidence supports the trial court's conclusion that D.F. failed to

17

comply with the requirement of the Service Plan that she refrain from associating with individuals who used illegal substances or alcohol. Ms. Berry did advise that D.F. underwent random drug tests and did complete a psychological evaluation, which were required under the Service Plan. D.F. was diagnosed with depression in January of 2011. However the Department did not amend the plan to include any requirements in relation to this diagnosis.

The evidence presented, including her own admissions, established that D.F. was not in compliance with her Service Plan. She did not: (1) secure employment; (2) demonstrate an ability to provide a safe home; (3) refrain from drug use; (4) maintain contact with K.J.F.; or (5) maintain contact with her caseworker. In reviewing the evidence in the light most favorable to the finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that D.F. failed to comply with the provisions of the court ordered Family Service Plan which specifically established the steps necessary for D.F. to reunite with K.J.F. and that K.J.F. had been in the temporary managing conservatorship of the Texas Department of Family and Protective Services. TEX.FAM.CODE ANN. § 161.001(1)(O). The evidence was legally sufficient to establish the statutory predicate of omission under paragraph (O). *See In re A.D*., 203 S.W.3d 407, 413-14 (Tex.App.--El Paso 2006, no pet.)(finding legally and factually sufficient evidence to support termination of parental rights under (O) for failing to comply with service plan).

D.F. next argues the evidence is factually insufficient because she completed a "significant portion" of the plan, and even attended parenting classes which the Service Plan did not require. Though D.F. may have taken additional unrequired actions, she still failed to meet other material requirements such as obtaining the drug assessment, finding employment, and demonstrating an ability to provide a safe home. *In re J.F.C*., 96 S.W.3d at 278 (partial compliance is insufficient

18

to establish complete compliance under court ordered plan); *see also In re M.C.G.*, 329 S.W.3d 674, 675 (Tex.App.--Houston [14th Dist.] 2010, pet. denied)(holding that any excuse for failing to complete service plan goes only to best interest determination).

We conclude that the evidence is factually sufficient to support the court's finding under Section 161.001(1)(O) because a reasonable trier of fact could reasonably have formed a firm belief or truth that D.F. failed to comply with the provisions of the Family Service Plan. Appellant's second issue is overruled.

**Best interests**

D.F.'s final issue is that the evidence was factually insufficient to support termination of her parental rights because there was insufficient evidence of a plan for permanency for K.J.F. post-termination that took into account K.J.F.'s "siblings." Further, D.F. contends that the evidence established that D.F. had completed most of the Service Plan, and Ms. Berry testified that D.F. was loving and appropriate with K.J.F.

The Texas Supreme Court has recognized a number of factors used for best-interest determinations. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). These factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 372 (footnotes

omitted); *M.C.*, 300 S.W.3d at 311.   The *Holley* factors are not exhaustive.   *M.C.*, 300 S.W.3d at 511.   No single factor is controlling, and the fact finder is not required to consider all of the factors.   *Id.*   Undisputed evidence of a single factor may be sufficient to support a finding that termination of parental rights is in the best interest of a child.   *Id.*

### *Desires of the child*

K.J.F. is very young.   She was six or seven months old when the Department was given temporary custody, and was not yet three years old at the time of the trial.   Obviously, the record is silent as to K.J.F.'s express desires.

However, Ms. Berry testified that K.J.F. had adjusted very well to living with her foster family.   She stated that K.J.F. was "very healthy" and living a "very stable" life.   Evidence that a child has bonded with a foster parent may support a best interest finding.   *See In re U.P.*, 105 S.W.3d 222, 230 (Tex.App.--Houston [14th Dist.] 2003, pet. denied).

Ms. Berry acknowledged that D.F. loved K.J.F. and that the two visits D.F. had with K.J.F. in January of 2011 had gone "extremely well."   She observed good interaction between K.J.F. and D.F.   However, D.F. did not see K.J.F. from June through December of 2010, did not regularly visit K.J.F. after October 2011, did not see or ask about K.J.F. from mid-November through December of 2011, and stopped visiting K.J.F. after the two January 2011 visits.   D.F. argues that evidence of the visits in January weight this factor in her favor and against termination.   Upon review, we conclude that this factor is at worst neutral, and at best weighs in support of termination on the basis that K.J.F.'s bond with the foster family evidences her desires.   However, even if this factor weighed clearly in favor of D.F., it is outweighed by evidence of other factors supporting termination.   *In re M.H.*, 319 S.W.3d 137, 150-51 (Tex.App.--Waco 2010, no pet.)(noting that

20

evidence of the child's desires was only "marginally relevant" in light of evidence supporting termination where mother was unable to care for children's emotional and physical needs, lacked the requisite parental abilities, and was unable to provide a stable home, among other factors).

*The emotional and physical needs of the child now and in the future, and the emotional and physical danger to the child now and in the future.*

D.F. argues that separation of K.J.F. from T.W.'s children demonstrated a disregard for K.J.F.'s emotional needs.   D.F. asserts that there is "ample evidence" that K.J.F. and T.W.'s children were "like siblings."   D.F.'s focus is that while the Department allowed joint visitations and that hearings were held on the same dates for T.W. and D.F., the Department never placed the children together.   The evidence established that while the Department's initial plan was family reunification, the plan changed as a result of T.W. and D.F.'s separation in August of 2011. Absent the possibility of reunification, the Department's goal became relative adoption with a concurrent goal of foster adoption.   D.W.'s mother's home study was not positive.   The Department sought a home study with D.F.'s sister, but the sister never responded to calls from the Department.   Ms. Berry testified that the Department preferred placement with a blood relative and was willing to consider placement with T.W.'s children, however the Department had a more permanent placement for K.J.F.

D.F.'s argument is less of an argument that the Department failed to account for K.J.F.'s emotional needs, and more an argument that D.F.'s preference was for joint placement of K.J.F. with T.W.'s children.   D.F. also suggested joint placement with S.B. if T.W.'s children were placed with S.B.   While there is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship; *see In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006)(per curiam), the focus is on the best interest of the child - not the best interest of the parent.

21

*See Dupree v. Tex. Dept. of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex.App.--Dallas 1995, no writ).

There is nothing in the record indicating that K.J.F. has any special physical, emotional, or psychological needs.   At the time of removal, K.J.F. did have medical needs, but they have since been remedied.   However, evidence of unstable and unsafe housing relates to findings under the third and eighth *Holley* factors.   *See In re R.R., Jr.*, 294 S.W.3d 213, 236-37 (Tex.App.--Fort Worth 2009, no pet.).   The evidence in this case shows that D.F. was not able to maintain safe housing for K.J.F., either in California or in El Paso, and would often leave K.J.F. in the care of others for long periods of time.   This evidence tends to support termination.

*The parental abilities of the individuals seeking custody*

Admirably, D.F. took it upon herself to complete parenting classes even though they were not required under the Service Plan.   However, the characterization of D.F.'s visitation with K.J.F. differs, with D.F. calling it "consistent" up to the "breakdown," after which D.F. voluntarily sought mental health services.   The Department's position is that D.F. failed to secure the basic necessities for K.J.F., failed to keep in regular contact with K.J.F., and engaged in domestic violence in K.J.F.'s presence.   The parties disagree as to the reasons why K.J.F. and T.W.'s children were sent to El Paso, with D.F. asserting this was a "self-less parenting decision," and the Department noting that it was done to prevent California Child Protective Services from removing the children from D.F.   Certainly, D.F.'s frequent moves caused concern regarding her parental abilities.   *See Yonko v. Dept. of Family and Protective Services*, 196 S.W.3d 236, 247 (Tex.App.--Houston [1st Dist.] 2006, no pet.)(noting same).

At one point, D.F. advised Ms. Berry that she was going to use a tax refund to obtain an

22

apartment and pay four months' advance rent while she sought employment. However, D.F. did not follow through with her plan, implying that she and T.W. had a "nice birthday party" for one of T.W.'s daughters and that the money had been spent on the children. This evidence casts additional doubt on D.F.'s parenting abilities. A reasonable fact finder could certainly form a firm belief or conviction that D.F. lacked the parental abilities necessary to care for K.J.F.

*The programs available to assist these individuals to promote the best interest of the child*

The evidence showed that D.F. lived at the Opportunity Center on and off during the pendency of the case and that the Opportunity Center did not allow children to stay in its facility. D.F. contends that Ms. Berry stopped searching for alternative housing when she learned that there was room at the Opportunity Center for D.F. and that D.F. had not been banned from the Opportunity Center. Ms. Berry discovered this information at a time when D.F. was living behind the courthouse. D.F. asserts that the Department failed to provide her with a full list of services and referrals which could have assisted her, and that by doing so this factor weighs in her favor. D.F. states that the "[e]vidence showed that D.F. did not have a support system outside of the homeless community in El Paso."

Again, D.F. did complete parenting classes and complied with a referral for a psychological examination, however, D.F. did not attend an initial appointment at Alivane arranged by Ms. Berry regarding D.F.'s drug use. Furthermore, Ms. Berry provided D.F. with a list of apartments which would work with D.F. and T.W., despite D.F.'s concerns that she would not qualify for Section 8 housing. The Department was obligated to assist D.F. in her search for suitable, stable housing, but D.F. was obliged to follow through on that assistance and she elected not to do so. D.F. also failed to maintain regular contact with Ms. Berry. D.F.'s attempts to

23

complete some of the plan's requirements might weigh against termination being in K.J.F.'s best interest, but her failure to successfully take advantage of the majority of programs and assistance offered by the Department weighs in favor of the trial court's conclusion that termination was in K.J.F.'s best interest.

*The plans for the child by these individuals or by the agency seeking custody*

D.F. does not address this factor in her brief. The evidence shows that D.F. told Ms. Berry that she loved K.J.F., but that the only plans for K.J.F's future were those discussed at the January 13, 2012 meeting, where D.F. advised Ms. Berry that she hoped K.J.F. would be placed with D.F.'s sister in Kileen. As there is no clear evidence indicating D.F.'s plans for K.J.F. for the future that would serve K.J.F.'s best interest, this factor favors termination.

*The stability of the home or proposed placement*

D.F. does not address this factor in her arguments. The unchallenged evidence presented is that D.F. has been unable to obtain or maintain stable housing for herself or for K.J.F. In contrast, the Department has been able to secure a suitable, stable placement in a foster home for K.J.F., with parents who are interested in adopting her. D.F. has presented no evidence of future stability. Ultimately, this factor favors termination. *See Doe v. Brazoria County Child Protective Servs.*, 226 S.W.3d 563, 575 (Tex.App.--Houston [1st Dist.] 2007, no pet.)(finding that this factor weighed against parent where parent lacked a home for the children and could not demonstrate freedom from drugs).

*The acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper relationship, and any excuse for the parent's acts or omissions.*

D.F. contends that her separation from T.W. and subsequent diagnosis of depression are an excuse for D.F.'s non-compliance with the Service Plan, specifically for her failure to maintain

24

visitation with K.J.F.   The Department contends that D.F.'s:   (1) history of homelessness, joblessness, and failure to provide an appropriate home for K.J.F.; (2) ongoing substance abuse during the pendency of the case; (3) medical neglect of K.J.F., specifically that K.J.F. was in need of medical attention when removed; (4) commission of an act of domestic violence in K.J.F.'s presence; and (5) failure to remain in regular contact with K.J.F., including absenting herself from K.J.F.'s life for months at a time, all demonstrate an improper parent-child relationship between D.F. and K.J.F.

D.F. argues that her separation and depression serve as an excuse for her failure to comply with the terms of the Service Plan.   D.F. provides no excuse for her:   (1) marijuana use; (2) failure to obtain and maintain housing; (3) failure to obtain or keep employment; (4) failure to comply with the Service Plan by not associating with persons who use illegal substances or alcohol; and (5) failure to maintain contact with Ms. Berry as required by the Service Plan.

The trial court, as fact finder, was entitled to disbelieve some, none, or all of D.F.'s excuses based on the evidence presented, and reasonably could have formed a firm belief or conviction that D.F. excuses for her actions and inactions were simply inadequate.   These factors also favor termination.

Viewing the evidence in the light most favorable to the judgment for a legal sufficiency analysis and all of the evidence equally for a factual sufficiency analysis, we conclude that a reasonable fact finder could have formed a firm belief or conviction that K.J.F.'s best interest is served by termination of D.F.'s parental rights.   The evidence presented was both legally and factually sufficient to support the trial court's finding.   Appellant's third issue is overruled.

**CONCLUSION**

25

Having overruled each of Appellant's issues, the judgment of the trial court is affirmed.


November 7, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.