

# NUMBER 13-19-00342-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF A.P. and A.V., CHILDREN

### On appeal from the 156th District Court
### of San Patricio County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Tijerina**
**Memorandum Opinion by Chief Justice Contreras**

The trial court terminated appellant Mother's parental rights to her daughters A.P. and A.V.[1] By three issues, Mother argues that: (1) her constitutional due process rights and statutory rights under the Texas Family Code were violated, (2) the evidence is legally and factually insufficient to support termination under § 161.001(b)(1)(N) and

---

[1] To protect the identity of the children, we refer to those involved in the case by aliases, as necessary. *See* TEX. R. APP. P. 9.8(b).

§ 161.001(b)(1)(O) of the Texas Family Code, and (3) the evidence is insufficient to support a finding that termination was in the best interest of the children. We affirm.

## I. BACKGROUND

On May 29, 2007, the Department of Family and Protective Services (the Department) received a referral alleging the neglectful supervision and physical neglect of A.P. and A.V. by Mother. The referral alleged that the children were often left unsupervised or in the care of other children, that Mother was prostituting herself for food and money, and that Mother would smoke marijuana in front of the children. It was also reported that other family members in the house were either using cocaine or selling their resources for drugs. The report described that the children in the home had lice and would sometimes go without food. The Department received reports alleging abuse and neglect of the children throughout 2008 and also in 2012.

On April 18, 2013, the Department received another report alleging the physical abuse of A.P. by two unknown alleged perpetrators and the neglectful supervision of A.P. by Mother. The report also alleged that A.V. had scabies and that A.P. had a "BB" gun pellet embedded in her head. In May 2013, the Department filed a suit affecting parent-child relationship due to abuse or neglect of the children and removed the children from Mother's care. *See* TEX. FAM. CODE ANN. § 262.104 (providing that the Department may take possession of a child in an emergency without a court order); *see also id.* § 262.001(a) ("A governmental entity with an interest in the child may file a suit affecting the parent-child relationship requesting an order or take possession of a child with court order as provided by this chapter."). On May 16, 2014, the trial court signed a final order appointing Juan Sandoval and Eulalia Sandoval as permanent managing conservators.

On June 25, 2018, the Department removed the children from the Sandovals' home due to allegations of abuse and neglect and filed another suit requesting that the Sandovals be removed as managing conservators, that the Department be assigned as the temporary managing conservator for the children, and that Mother's parental rights be terminated. The Department filed a motion to consolidate the new case with the previous trial cause number that resulted in the appointment of the Sandovals as managing conservators. On July 3, 2018, the trial court signed an order consolidating both causes.

After removing the children from the Sandovals, the Department placed them in a foster home with Rhonda Brown because they could not go back to Mother. However, the relationship between the children and Brown deteriorated due to Mother's contact with the children through social media. The Department then removed the children and placed them with a third family.

Trial began in June of 2019 and evidence was presented that, in July 2018, Mother was provided with a family service plan detailing the actions she needed to complete in order to be reunited with both girls and avoid the termination of her parental rights. In particular, the family service plan required Mother to: submit to random drug testing; cooperate with the Department and demonstrate knowledge of skills learned; maintain contact with the children as ordered by the court; participate in supervised visits; pay any ordered child support; have a stable living environment that is free of domestic violence, clean, safe, and drug free; complete substance abuse counseling and follow all recommendations; complete a mental health assessment and follow all recommendations; complete a psychosocial assessment and follow all

3

recommendations, including individual counseling; and complete parenting classes and demonstrate the appropriate parenting skills attained. The service plan was incorporated into a court order on August 17, 2018.

Mother was thirty-one years old at the time of trial, had not worked since she was fourteen years old, and stated she had not lived with the children for nine years.[2] She testified she completed her mental psychosocial assessment, substance abuse course, mental health assessment, and parenting classes. The psychosocial assessment recommended psychiatric services and resuming medication management to stabilize Mother's diagnoses; however, Mother had not taken her medication and was planning on picking it up from the pharmacy after the trial.[3]

As to her drug use and the required drug tests, Mother stated she began using cocaine when she was eight years old and that she tested positive for cocaine in July, September, and November of 2018. Mother failed to take a drug test as required in August, October, or December of 2018 or any months between January and June of 2019. Mother stated that she had last used cocaine two weeks before trial, had not stayed in touch with her caseworker, and had not had any contact with her children.[4] Mother could not recall when she last visited the children, but she testified that it had been over a year.

---

[2] We note that the Department's lawsuit removing the children from Mother's care and appointing the Sandovals as permanent managing conservators was filed in 2013, six years before the termination trial.

[3] According to Mother, she was diagnosed with severe depression, bipolar disorder, and attention deficit hyperactivity disorder.

[4] Later in her testimony, Mother explained she had been in contact with the girls through social media during the pendency of the case. The court order adopting the family service plan stated that Mother was to have supervised visitation twice a week.

4

Mother explained she had not visited the children because she lacked transportation from her home in Taft, Texas to where the visitations were held in Sinton, Texas.[5]

When asked about her plans for the children now and in the future, Mother stated she "just want[s] them to finish school and graduate and have a good job." She testified she would get a job if the children were returned to her and that she would quit using cocaine. According to Mother, the girls tell her that they love and miss her and want to come home and live with her in Taft. Mother testified she lives in a two-bedroom apartment with her grandmother. When asked where the children would sleep if they were returned to her, Mother responded that they would sleep in two beds in the second bedroom in the apartment and she would sleep on the couch. Mother admitted that her plans regarding her work were all in the future and that nothing was taking place at the current moment.

Jennifer Edgehill, the caseworker with the Department assigned to the case, also testified at trial. According to Edgehill, Mother had not maintained contact with the Department for the five months preceding trial. Mother contacted Edgehill "from over ten different phone numbers" and when Edgehill would call back, those numbers were out of service or it appeared the calls were made through a wireless app.

Edgehill explained Mother had lived in two different homes since she had been assigned to the case in January 2019 and that Mother currently lived with her grandmother in a clean two-bedroom apartment. However, according to Edgehill, it would not have been appropriate to place the girls there because grandmother had one of her other grandchildren, a child, already living there in addition to Mother. Edgehill stated,

---

[5] The distance between Sinton and Taft is about eight and a half miles.

5

"So there was a bedroom that was taken up already by a child, then [grandmother's] bedroom, and then [Mother] on the couch." Further, "grandmother has validated C.P.S. [abuse or neglect] history with [A.V.] so the Department would not consider that to be a safe environment."

As to the visitation requirement in the plan, Edgehill testified that Mother did not consistently attend her visits when she had lived in Sinton, the same town where the girls were located at the time. Mother then moved to Taft and continued to fail to attend her visits consistently. Mother would often confirm her visit but would cancel twenty minutes before it was due to start, causing a lot of disappointment and emotion in the children. In February 2019, Mother texted Edgehill and informed her she no longer wanted to attend any of her visits because she did not have reliable transportation. Edgehill testified that Mother had not demonstrated a good faith effort to fulfill the visitation requirement.

Edgehill confirmed Mother completed her substance abuse assessment in October 2018, but that Mother admitted to using cocaine in January 2019. As a result, Edgehill made a referral for relapse prevention counseling, but the provider told Edgehill that Mother informed the provider that "she would not be participating in any further services." Mother did not complete the relapse prevention program. Mother also did not provide the Department with a certificate of completion for her parenting classes or take a drug test since November 2018, as required by the service plan.

According to Edgehill, the children are currently in an approved home study placement and have expressed to her "clearly and directly that they would like to be adopted by this family." Edgehill also explained that the children did not want to live in Taft because they were afraid of the Sandovals, who also live there. In the foster home

6

with Brown, the children "had been on social media, had stolen phones from the foster mother and had been [inappropriate] on social media . . . ." Edgehill explained:

> Primarily, the girls had expressed that they would be on social media and their mother would get in contact with them and would make them false promises; that they would come home and that they were going to be a family again, and that would cause a rift between the girls and their foster mother because she couldn't combat that as much as she really wanted to. The girls believed what their mother told them and, unfortunately, it led to a lot of behaviors. I've had very direct conversations with them about choosing not to respond to their mother when she reaches out to them, but certainly they would get on other kids' phones at school, things of that nature, so we really couldn't control that, but it did lead to a lot of emotional strife for them, still to this day. [A.P.] is very angry with her mother about not getting them back and [A.V.] is very sad about it because they feel as though their mother has given up on them and that she did not make the efforts to get them back as she promised them.

Edgehill did not believe that Mother had demonstrated to the Department that she could care for the children long term. She recommended that the trial court terminate Mother's parental rights and that termination was in the best interest of the children. Edgehill acknowledged the girls had expressed conflicting opinions about whether they wanted to go back to their Mother.

The trial court found there was cause to terminate Mother's parental rights under § 161.011(b)(1)(N) and (O) of the Texas Family Code and that termination was in the children's best interest.[6] This appeal followed.

## II.    2014 ORDER

By her first issue, Mother argues that her due process and statutory rights were violated because she was not represented by counsel when the trial court entered a "Final Order in Suit Affecting the Parent-Child Relationship" on May 27, 2014. *See* TEX. FAM.

---

[6] The trial court also issued an order that Eulalia Sandoval have no legal relationship with the children. Juan Sandoval passed away prior to trial. The Sandovals are not parties to this appeal.

CODE ANN. §§ 107.013 (providing for the mandatory appointment of attorney ad litem for the parent), 107.016 (providing that attorney ad litem continues to serve until the end of the lawsuit). The Department argues that we lack jurisdiction to resolve this issue. We agree with the Department.

"An appeal from a final order rendered in a suit, when allowed under this section or under other provisions of law, shall be as in civil cases generally under the Texas Rules of Appellate Procedure . . . ." TEX. FAM. CODE ANN. § 109.002 (providing for appellate review under the family code). "To be final, a judgment must determine the rights of the parties and dispose of all the issues involved so no future action will be necessary in order to settle and determine the case." *In re N.J.G.*, 980 S.W.2d 764, 766–67 (Tex. App.—San Antonio 1998, no pet.) (quoting *Kelley v. Kelley*, 583 S.W.2d 671, 673 (Tex. App.—Austin 1979, writ dism'd)); *In re J.D.*, 304 S.W.3d 522, 524 (Tex. App.—Waco 2009, no pet.) ("Generally, a judgment is final if it disposes of all pending parties and claims in the record."). "A judgment is interlocutory when it determines less than all issues as to all parties thereby leaving something to be determined and adjudicated by the court in disposing of the parties and their rights." *In re N.J.G.*, 980 S.W.2d at 67. Accordingly, an order is interlocutory if it leaves open the issue of permanent conservatorship. *Id.*; *Kelley*, 583 S.W.2d at 673.

The 2014 order Mother complains of stemmed from a separate suit affecting the parent and child relationship filed by the Department. The order appointed the Sandovals as the permanent managing conservators of the children and denied all other relief requested not expressly granted in the order. In other words, the 2014 order disposed of all the issues and parties in that case; thus, the order was final and appealable and subject

8

to the Texas Rules of Appellate Procedure for accelerated appeals. *See* Tex. Fam. Code Ann. § 263.405 (providing that "[a]n appeal of a final order rendered under this subchapter is governed by the procedures for accelerated appeals in civil cases under the Texas Rules of Appellate procedure."); *In re J.D.*, 304 S.W.3d at 526; *see also* Tex. R. App. P. 28.4. In an accelerated appeal, the complaining party must file its notice of appeal within twenty days after the judgment or order is signed. Tex. R. App. P. 26.1. If the appeal is not timely perfected, then we lack jurisdiction and must dismiss the appeal. *See Naaman v. Girder*, 126 S.W.3d 73, 74 (Tex. 2003) (per curiam).

Because more than twenty-one days have passed since the trial court signed the final order on which Mother bases her complaint, Mother did not timely perfect her appeal, and we lack jurisdiction to review this complaint.[7] *See* Tex. R. App. P. 26.1; *Naaman*, 126 S.W.3d at 74.

We overrule Mother's first issue.

### III. TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.); *see Santosky v. Kramer*, 455 U.S. 745, 753 (1982). "Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases." *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). Accordingly, termination proceedings

---

[7] Mother was properly represented by counsel in the underlying termination proceeding.

9

must be strictly scrutinized. *Id.* at 112 (majority opinion). In such cases, due process requires application of the "clear and convincing" standard of proof. *Id.* (citing *Santosky*, 455 U.S. at 769; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)). This intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re L.J.N.*, 329 S.W.3d at 671. "'Clear and convincing evidence' means a 'measure of degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (quoting TEX. FAM. CODE ANN. § 101.007); *see In re K.M.L.*, 443 S.W.3d at 112–13 ("In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true.").

The trial court may order the termination of the parent-child relationship if the court finds by clear and convincing evidence that: (1) the parent committed an act or omission described in family code § 161.001(b)(1) and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re N.G.*, 577 S.W.3d at 232. "To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d at 232; *see* TEX. FAM. CODE ANN. § 161.001(b).

In conducting a legal-sufficiency review, the reviewing court cannot ignore undisputed evidence contrary to the finding, but it must otherwise assume the factfinder

10

resolved disputed facts in favor of the finding.  *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018).  Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true.  *Id.* at 631.

In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable fact finder could not have resolved it in favor of the finding.  *Id.*  Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credit in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true.  *Id.*

## IV.    FAMILY CODE § 161.001(b)(1)(O)

By her second issue, Mother argues the evidence is legally and factually insufficient to support termination under either § 161.001(b)(1)(N) or § 161.001(b)(1)(O) of the Texas Family Code.

Under part (O) of family code subsection 161.001(b)(1), parental rights may be terminated upon a finding that the parent

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child . . . .

TEX. FAM. CODE ANN. § 161.001(b)(1)(O).

Here, the children were removed from the Sandovals in 2018 under chapter 262 of the family code.  *See id.* § 262.104 (providing that the Department may take possession of a child in an emergency without a court order); *see also id.* § 262.001(a) ("A

11

governmental entity with an interest in the child may file a suit affecting the parent-child relationship requesting an order or take possession of a child with court order as provided by this chapter."). However, the fact that the children were removed from the Sandovals care, rather than Mother's, is irrelevant because: (1) the children were originally removed from Mother's care in 2013 under chapter 262 due to abuse and neglect of the children; and (2) "[c]hildren are removed from their parents under Chapter 262 for the abuse or neglect of a child [even] where the children may have been physically in the care of a relative, a medical or social services institution, or the Department." *See D.F. v. Tex. Dep't of Fam. & Protective Servs.*, 393 S.W.3d 821, 829–830 (Tex. App.—El Paso 2012, no pet.) (noting that Texas does not apply a restrictive interpretation to § 161.001(b)(1)(O) requiring that the children be physically removed from a parent's care); *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (concluding that child in care of a shelter at the time of removal was removed from the parent under chapter 262 for abuse or neglect); *see also In re J.B.*, No. 02-18-00173-CV, 2018 WL 4626427, at *5 (Tex. App.—Fort Worth Sept. 27, 2018, no pet.) (mem. op.); *In re J.H.*, No. 09-14-00171-CV, 2015 WL 5093400, at * 4–5 (Tex. App.—Beaumont Aug. 31, 2015, no pet.) (mem. op.) (rejecting mother's argument that child was not removed from her care when child was removed from relatives appointed as managing conservators because the child "was originally removed from Mother's care pursuant to Chapter 262"); *In re B.C.*, No. 04-14-00744-CV, 2015 WL 1938679, at *3–4 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.); *Z.L. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-13-00598-CV, 2014 WL 538888, at *4 (Tex. App.—Austin Feb. 7, 2014, no pet.) (mem. op.).

The record also demonstrates that the children were in the temporary managing conservatorship of the Department for more than nine months after their removal. *See id.* § 161.001(b)(1)(O). Mother's family service plan provided the actions necessary for Mother to obtain the return of the children, and the trial court adopted Mother's family service plan and made it part of an order of the court on August 17, 2018. Thus, to determine whether termination was proper under § 161.001(b)(1)(O), we look to see whether Mother failed to comply with the court order. *See id.*

The burden of complying with the court order is on the parent. *In re S.J.R.-Z.*, 537 S.W.3d 677, 690 (Tex. App.—San Antonio 2017, pet. denied). Part (O) does not provide a means of evaluating partial or substantial compliance with a plan, and it does not "make a provision for excuses" for the parent's failure to comply with the service plan. *In re D.N.*, 405 S.W.3d 863, 877 (Tex. App.—Amarillo 2013, no pet.); *see* Tex. Fam. Code Ann. § 161.001(b)(1)(O). Therefore, "substantial compliance is not enough to avoid a termination finding" under this statute. *In re C.M.C.*, 273 S.W.3d 862, 875 (Tex. App.—Houston [14th Dist.] 2008, no pet.). We look only for a parent's failure to comply fully with a court order without reference to the quantity of failure or degree of compliance. *See In re S.J.R.-Z.*, 537 S.W.3d at 690; *In re I.G.*, 383 S.W.3d 763, 771 (Tex. App.—Amarillo 2012, no pet.).

It is undisputed that Mother failed to comply with numerous, material provisions of the service plan. For example, Mother failed to visit the children regularly as required; failed to take the medication prescribed after her mental health assessment; failed to submit to drug tests as required for the months of August, October, and December of 2018 and for the months between January and June of 2019; tested positive for cocaine

13

in July, September, and November of 2018; admitted using cocaine two weeks before trial; failed to complete the relapse prevention program; and failed to provide a home that was safe for the children. Accordingly, we conclude that a reasonable fact finder could have formed a firm belief or conviction that Mother failed to comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O); *In re J.F.C.*, 96 S.W.3d at 277–79 ("[S]poradic incidents of partial compliance do not alter the undisputed fact that the parties violated many material provisions of the trial court's orders."); *In re S.J.R.-Z.*, 537 S.W.3d at 690. The evidence is both legally and factually sufficient.[8] *See In re A.C.*, 560 S.W.3d at 630–31; *In re J.F.C.*, 96 S.W.3d at 266–67.

We overrule Mother's second issue.

## V. BEST INTEREST OF THE CHILDREN

By her third issue, Mother argues the evidence is legally and factually insufficient to support a finding that termination was in the best interest of the children.

There is a strong, though rebuttable, presumption that keeping a child with a parent is in the child's best interest. TEX. FAM. CODE ANN. § 153.131; *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

---

[8] Having found sufficient evidence to support the trial court's finding under part (O), we need not address whether the evidence was sufficient to support a finding under part (N). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."); *cf. In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) ("When a parent has presented the issue on appeal, an appellate court that denies review of section 161.001(b)(1)(D) or (E) finding deprives the parent of a meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children."); *see also* TEX. R. APP. P. 47.1.

Factors that we consider in determining whether termination of parental rights is in the child's best interest include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist the parties seeking custody; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions committed by the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *see* TEX. FAM. CODE ANN. § 263.307(b). The party seeking termination is not required to prove all nine *Holley* factors; in some cases, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of the child. *In re C.H.*, 89 S.W.3d 17, 25, 27 (Tex. 2002); *In re S.B.*, 207 S.W.3d 877, 886 (Tex. App.—Fort Worth 2006, no pet.). Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d at 28. We will discuss the *Holley* factors for which there was evidence presented.

In determining the child's best interest, a court may consider the express desires of a child who is of sufficient age and maturity. *In re F.M.E.A.F.*, 572 S.W.3d 716, 732 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *see also In re D.W.*, 445 S.W.3d 913, 926 (Tex. App.—Dallas 2014, pet. denied) (discounting the desires of children ages five through nine because "there was no indication that any of the children were sufficiently mature to express preference as to their placement").

15

At the time of trial, A.P. and A.V. were fourteen and thirteen years old respectively. Edgehill testified the children are currently in an approved home study placement with a family who had expressed an interest in adopting the girls. According to Edgehill, the children had expressed "clearly and directly" to her that they would like to be adopted by this new family, and the family wants to adopt them. Mother testified that the children told her they miss and love her and want to come home, and Edgehill acknowledged the children previously expressed differing wishes during the case. However, Edgehill explained:

> I think they are very typical children in foster care who want to believe that their parent tells them about how things are going to change or be different, but . . . they understand that their mother did not do what the Department asked of her and they're both sad and angry about it, truly.

Edgehill also stated the children did not want to live in Taft, where Mother lived with her grandmother, because they were afraid of the Sandovals, who also lived in Taft and had abused them. This factor supports termination.

Multiple other factors also support the trial court's determination that termination of Mother's parental rights was in the best interest of the children. The evidence presented at trial established that Mother had mental health problems she was failing to address (she was diagnosed with severe depression, bipolar disorder, and attention deficit hyperactivity disorder; quit attending therapy sessions; and did not take the prescribed medication); she had a drug problem that she was failing to address (she admitted using cocaine two weeks prior to trial, had used cocaine for most of her life, tested positive for cocaine in each drug test she took during the pendency of the litigation, and did not attend her relapse prevention program as recommended by her mental health assessment); and Mother could not maintain gainful employment or provide for the needs

16

of the children (she had not worked since she was fourteen due to a lack of transportation and had not attempted to obtain a job). Mother failed to visit the children as scheduled and made false promises to them, which resulted in emotional turmoil for the children. All of this evidence supports termination and is relevant to the third, fourth, and eighth *Holley* factors, regarding danger to the child, parenting abilities of the parent, and propriety of the parent-child relationship, respectively. *See Holley*, 544 S.W.2d at 372; *In re S.N.*, 272 S.W.3d at 252 (noting that a parent's illegal drug use is a circumstance that can contribute to an unstable lifestyle and is relevant in determining present and future danger to a child's physical and emotional well-being); *In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.) (noting that the fact finder can give "great weight" to the "significant factor" of drug-related conduct); *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("A factfinder may infer from a parent's past inability to meet a child's physical and emotional needs an inability or unwillingness to meet a child's needs in the future."); *see also In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) ("[P]arent's engaging in illegal drug activity after agreeing not to do so in a service plan for reunification with her children is sufficient to establish clear and convincing proof of voluntary, deliberate, and conscious conduct that endangered the well-being of her children."); *Castorena v. Tex. Dep't of Protective & Regulatory Servs.*, No. 03-02-00653-CV, 2004 WL 903906, at *11 (Tex. App.—Austin 2004, no pet.) (mem. op.) (noting that the trial court could properly infer that parents' history of instability and criminal conduct, which had previously endangered the children, might recur if the children were returned to them).

Furthermore, Mother had not lived with the children for nine years, had not seen the children in over a year, and failed to complete multiple, material requirements of her family service plan. This evidence is relevant to the fourth and eighth factors and supports termination. *See Holley*, 544 S.W.2d at 372. Finally, the home that Mother planned to live with the children in Taft was unacceptable and not safe, according to the Department, because her grandmother had a prior history of abuse or neglect concerning A.V. On the other hand, the home where the children were placed at the time was stable, approved by the Department, and the family intended to adopt the girls permanently. This evidence is relevant to the sixth and seventh factors (plans for the child by the party seeking custody and stability of the proposed placement) and also supports termination. *See* TEX. FAM. CODE ANN. § 263.307(a); *Holley*, 544 S.W.2d at 372.

Applying the applicable *Holley* factors to the evidence, we conclude that a rational trier of fact could have formed a firm belief or conviction that termination was in the best interest of the children. *See In re J.F.C.*, 96 S.W.3d at 266–67; *Holley*, 544 S.W.2d at 372; *In re E.R.W.*, 528 S.W.3d 251, 266–67 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The evidence is both legally and factually sufficient. *See In re A.C.*, 560 S.W.3d at 630–31; *In re J.F.C.*, 96 S.W.3d at 266–67.

We overrule Mother's third issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Delivered and filed the
26th day of November, 2019.

18