# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00593-CV

### A. B. a/k/a A. L. B. a/k/a A. B. a/k/a M. S., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-18-005046, THE HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A.B. a/k/a A.L.B. a/k/a A.B. a/k/a M.S. (Mother) appeals the trial court's final decree terminating her parental rights to her child, Annie,[1] who was about twelve months old at the time of the bench trial. Mother asserts that the evidence is legally and factually insufficient to support the trial court's termination findings, *see* Tex. Fam. Code § 161.001(b)(1)(O), (2), and that she received ineffective assistance of counsel. For the following reasons, we will affirm the trial court's final termination decree.

## SUMMARY OF THE EVIDENCE

The Department called one witness, its caseworker, who testified that Annie was removed from Mother's care shortly after birth because both Mother and Annie had "tested positive for PCP at the time of [Annie's] birth." Upon removal, the Department placed Annie with her paternal aunt and the aunt's husband (the foster parents). The foster parents have a

---

[1] We use a pseudonym to protect the child's identity. *See* Tex. Fam. Code § 109.002(d).

licensed foster home and previously adopted Annie's older brother. Annie lived with the foster parents from the time she was removed through the date of trial.

The caseworker explained that Mother was ordered to complete various services, including "an OSAR [Outreach Screening Assessment Referral], a parenting class, a psychological [evaluation], individual therapy . . . [and] drug testing." She testified that Mother had completed the OSAR but not the remaining requirements. She explained that the Department provided Mother with referrals for the required services but Mother told the caseworker she did not want to complete the services. The caseworker testified that she believed it was in Annie's best interest for Mother's rights to be terminated because Mother had "not demonstrated any willingness or ability to complete those services to alleviate th[e Department's safety] concerns"; Annie was very young and vulnerable; the Department "was not sure of [Mother's] housing situation"; and there was a history of substance abuse at Mother's home.

The caseworker testified that she has "concerns" about Mother's mental health and drug use, neither of which is "being addressed." She explained that Mother had refused to take drug tests for "different reasons every time," her explanations including that "she's using" drugs, "it's against her religion," and "she doesn't want to." The caseworker explained that her "specific concerns" about Mother's drug use are Mother's "being under the influence during visit[ations], her ability to care for her child under the influence, [and] her erratic behavior that she has demonstrated in different . . . meetings." The caseworker further testified that Mother came to the courthouse for a hearing the week before trial but left before the hearing started because she did not want to attend and was "upset, crying," and not "in a good state of mind."

The caseworker testified that the Department's permanency plan was for the foster family to adopt Annie and that the Department did not anticipate any barriers to the

2

adoption. She stated that the child was doing "really well" in the foster home and that if the foster parents adopted her, she could be raised with her older brother.

Annie's attorney and guardian ad litem represented to the trial court that he believed it was in Annie's best interest that Mother's rights be terminated, for the same reasons identified by the Department. Mother was not present at trial.

While not admitted into evidence,[2] the trial court rendered several interlocutory orders in this case, including (1) an August 17, 2018 "Ex-Parte and Show-Cause Order" granting the Department temporary managing conservatorship of Annie due to "immediate danger to the physical health or safety" of Annie, and (2) August 29, 2018 temporary orders, in which Mother was ordered to participate in and complete various services and actions.

## STANDARD OF REVIEW

A trial court may terminate a parent's rights to her child if clear and convincing evidence shows: (1) the parent has committed conduct that amounts to a statutory ground for termination, and (2) termination of the parent's rights would be in the child's best interest. Tex. Fam. Code § 161.001; *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014). In reviewing the legal sufficiency of the evidence in such a case, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We assume that the factfinder resolved disputed facts in favor of the finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. *Id.*; *see In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014). We "should not

___

[2] Mother challenges whether the trial court properly took judicial notice of its prior orders, which issue we address *infra*.

disregard undisputed facts that do not support" the determination, and "even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true." *K.M.L.*, 443 S.W.3d at 113.

In evaluating factual sufficiency, we view the entire record and uphold the finding unless the disputed evidence that could not reasonably have been credited in favor of a finding is so significant that the factfinder could not reasonably have formed a firm belief or conviction that the Department's allegations are true. *In re A.B.*, 437 S.W.3d 498, 502–03 (Tex. 2014). We defer to the factfinder's reasonable determination on issues of credibility that involve an evaluation of appearance or demeanor. *J.P.B.*, 180 S.W.3d at 573; *see A.B.*, 437 S.W.3d at 503.

## DISCUSSION

*Judicial notice*

We first address Mother's third issue, in which she contends that the trial court improperly took judicial notice of the court's file and, even if it did properly take judicial notice, that it improperly considered the truth of matters alleged in certain documents that were not admitted into evidence (i.e., the Department's removal affidavit and reports to the court) to support its findings. *See C.S. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00229-CV, 2017 WL 3471072, at *3 (Tex. App.—Austin Aug. 9, 2017, no pet.) (mem. op.) (noting that courts may not take judicial notice of factual allegations contained in pleadings or their attachments that have not been admitted into evidence). We disagree with Mother's position.

Initially, we note that the trial court was entitled to take judicial notice of its file, including its prior orders and fact findings therein. *See In re B.D.A.*, 546 S.W.3d 346, 363–64 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *C.S.*, 2017 WL 3471072, at *3. Mother contends that the record is not clear whether the trial court *actually* took judicial notice because

4

even though it inquired of the parties whether either had any objection to its taking judicial notice of its file, it never affirmatively stated on the record that it was so doing. However, the trial court was not required to affirmatively so state, as we may presume that it took judicial notice of the orders in its record of this case even without any request being made or any announcement in the record that it has been done. *See In re A.J.W.*, No. 04-19-00346-CV, 2019 WL 6333468, at *3 (Tex. App.—San Antonio Nov. 27, 2019, no pet.) (mem. op.); *Iqbal v. Federal Nat'l Mortg. Ass'n*, No. 03-15-00667-CV, 2017 WL 2856737, at *3 (Tex. App.—Austin June 29, 2017, pet. denied) (mem. op.).

As for Mother's contention that the trial court considered the documents in its file that were not admitted into evidence for the truth of the matters asserted therein, specifically the Department's removal affidavit and filed reports, nothing in the record indicates that the trial court did so. Furthermore, as discussed *infra*, the admitted evidence plus the trial court's own prior findings were sufficient to support the termination findings. Accordingly, we overrule Mother's third issue.

*Statutory-predicate finding*

In her first issue, Mother challenges the sufficiency of the evidence supporting the trial court's finding that she (1) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of Annie (2) who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months (3) as a result of Annie's removal from Mother under Chapter 262 for abuse or neglect. Tex. Fam. Code § 161.001(b)(1)(O). Mother does not challenge the evidentiary sufficiency supporting the second prong of subsection (O)—that Annie has been in the

5

Department's conservatorship for at least nine months—but only the evidence supporting the first and third prongs.

Mother contends that the only evidence supporting the first prong—whether she failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of Annie—is too "scant and conclusory" to constitute legally and factually sufficient evidence. We disagree. The record is economical but to the point and contains clear and convincing evidence of the specific requirements that Mother was ordered, but failed, to complete. In addition to the caseworker's testimony listing the specific actions required of Mother, the trial court's previous temporary orders—of which we presume the trial court took judicial notice, as discussed *supra*—listed the various actions the court had required of Mother, including submitting to random drug testing requested by the Department, completing parenting classes, and completing both a psychological evaluation and an OSAR evaluation and following all of their respective recommendations. From this evidence and the caseworker's unrebutted testimony about Mother's failure to complete several of the court-ordered requirements, a reasonable factfinder could have formed a firm belief or conviction that Mother failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of Annie, and we thus conclude that the evidence is legally sufficient to support the trial court's finding on the first prong of subsection (O). *See In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). Furthermore, Mother points to no evidence in the record to show that she completed all of her court-ordered requirements, and after considering the entire record, we conclude that the evidence is also factually sufficient to support the trial court's finding on this prong. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

6

With respect to whether the Department removed Annie from Mother's care for abuse or neglect (the third subsection (O) prong), Mother challenges the sufficiency of the only evidence supporting the finding—the caseworker's testimony that (1) Mother and Annie "tested positive for PCP" at the time of Annie's birth, and (2) the Department removed Annie "because of safety concerns" and "a history of substance abuse at [Mother's] house." Mother argues that nothing in the record indicates what PCP is or why it might be dangerous to a baby and that the caseworker's testimony about "safety concerns" and the "history of substance abuse" is merely conclusory. However, because PCP is a commonly used and understood acronym for phencyclidine, a schedule 1 controlled substance, we conclude that the Department did not need to present the court further evidence defining the drug or its potential effects on a fetus. *See* Tex. Health & Safety Code § 481.115; *see, e.g.*, *Coleman v. State*, 145 S.W.3d 649, 657 n.10 (Tex. Crim. App. 2004) (using PCP as acronym for phencyclidine); *Patrick v. State*, No. 05-18-00435-CR, 2018 WL 3968781, at *6 (Tex. App.—Dallas Aug. 20, 2018, no pet.) (mem. op., not designated for publication) (noting that phencyclidine is "commonly known as PCP"); *W.D. v. Texas Dep't of Family & Protective Servs.*, No. 03-14-00581-CV, 2015 WL 513267, at *1, *4 (Tex. App.—Austin Feb. 5, 2015, no pet.) (mem. op.) (using PCP as acronym and noting that drug abuse during pregnancy "constitutes conduct that endangers a child's physical and emotional well-being"); *see also D.T. v. Texas Dep't of Family & Protective Servs.*, No. 03-18-00770-CV, 2019 WL 1526429, at *3 (Tex. App.—Austin Apr. 9, 2019, no pet.) (mem. op.) (noting that, while ground (O) requires proof of abuse or neglect, "those terms include not only specific allegations of abuse or neglect but also the risk of abuse or neglect"); *cf. In re V.V.*, 349 S.W.3d 548, 556–57 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (describing how child tested positive for "opiates" at birth, without requiring explanation of "opiates" or dangers

of pre-birth exposure; affirming termination of father's rights on endangerment grounds based in part on child's positive drug test at birth).

In addition to the caseworker's testimony about why Annie was removed, the trial court had before it its finding in its prior "Ex-Parte and Show-Cause Order" that "there is an immediate danger to the physical health or safety of [Annie], or . . . [she] has been a victim of neglect or sexual abuse and that continuation in the home would be contrary to [her] welfare." The trial court similarly found in its later temporary orders that

- [T]here is a danger to the physical health and safety of [Annie] which was caused by an act o[r] failure to act of the persons entitled to possession of [Annie] and for [Annie] to remain in the home is contrary to the welfare of [Annie].

- [T]he urgent need for protection required the immediate removal of [Annie] and reasonable efforts, consistent with the circumstances and providing for the safety of [Annie], were made to eliminate or prevent the need for [Annie's] removal.

- [T]here is a continuing danger to the physical health or safety of [Annie] and for [Annie] to remain in the home is contrary to the welfare of [Annie].

A trial court's findings in its previous orders may be sufficient to support the third prong of subsection (O). *See E.C.R.*, 402 S.W.3d at 248–49; *see also D.F. v. Texas Dep't of Family & Protective Servs.*, 393 S.W.3d 821, 830–31 (Tex. App.—El Paso 2012, no pet.) (concluding that trial court's prior finding in temporary orders of immediate danger to child's physical health or safety or that child was neglected or abused supported finding that child was removed for abuse or neglect); *In re S.N.*, 287 S.W.3d 183, 190 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (relying in part on trial court's finding in temporary order that there was danger to physical health or safety of children to support third prong of subsection (O)).

8

In light of the caseworker's testimony about why Annie was removed and the trial court's prior findings about removal due to endangerment, abuse, and neglect, we conclude that a reasonable factfinder could have formed a firm belief or conviction that Annie was removed from Mother's custody for abuse or neglect and that the finding is, therefore, supported by legally sufficient evidence. *See E.C.R.*, 402 S.W.3d at 248. Furthermore, Mother points to no evidence in the record to show that Annie was removed for any reason other than abuse or neglect. Therefore, after considering the entire record, we conclude that the evidence is factually sufficient for a reasonable factfinder to have formed a firm belief or conviction that Annie was removed from Mother's care for abuse or neglect. *See J.F.C.*, 96 S.W.3d at 266. We overrule Mother's first issue.

*Best-interest finding*

Mother next challenges the trial court's finding that termination of her parental rights was in Annie's best interest. *See* Tex. Fam. Code § 161.001(b)(2). A factfinder's best-interest determination is reviewed in light of the non-exhaustive list of considerations set out in *Holley v. Adams*: the child's wishes, if the child is of an appropriate age to express such wishes; the child's present and future emotional and physical needs; present and future emotional and physical danger to the child; the parenting abilities of the individuals seeking custody; programs available to assist those people to promote the child's best interest; plans for the child by the people or agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the parent-child relationship is improper; and any excuse for the parent's acts or omissions. 544 S.W.2d 367, 371–72 (Tex. 1976).

The Department is not required to prove all of the *Holley* factors "as a condition precedent to parental termination," and a lack of evidence of some of the factors does not

9

"preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence presented to satisfy a predicate statutory-ground finding may also be probative of the child's best interest. *Id.* at 28. We summarize the evidence bearing on only those *Holley* factors on which there is relevant evidence in the record.

"The need for permanence is the paramount consideration when determining a child's present and future physical and emotional needs." *M.R. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00715-CV, 2018 WL 1023899, at *3 (Tex. App.—Austin Feb. 23, 2018, no pet.) (mem. op.). While there was no evidence about Annie's specific present or future physical and emotional needs, there was evidence about Mother's continued drug use during the pendency of the case, which placed her relationship with Annie at risk as well as her ability to provide for her child's emotional and physical needs.

Evidence shows that Annie and Mother tested positive for PCP at birth, there was a history of substance abuse in Mother's home, and Mother refused to take drug tests as required by the trial court's temporary orders. The caseworker testified that sometimes Mother explained her refusals to take drug tests during the pendency of this case as being due to her current drug use. Use of illegal drugs by a parent during the pendency of a case, in addition to use of illegal drugs while pregnant, is evidence of endangering conduct that weighs in favor of termination. *See In re J.S.*, 584 S.W.3d 622, 635 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *In re M.D.V.*, No. 14-04-00463-CV, 2005 WL 2787006, at *3 (Tex. App.—Houston [14th Dist.] Oct. 27, 2005, no pet.) (mem. op.); *In re S.M.L.D.*, 150 S.W.3d 754, 757–58 (Tex. App.—Amarillo 2004, no pet.).

Evidence showed that Mother refused to engage in several court-ordered services, including parenting classes and a psychological evaluation. Mother did not testify or present any other evidence of her plans for Annie, the stability or conditions of her home, her parenting abilities, or any excuses for her failure to complete the court-ordered services. The factfinder could reasonably infer from such evidence that Mother's parenting abilities were deficient or in need of improvement and that she did not have specific plans for Annie that align with the child's best interest.

The foster family hoped to adopt Annie, had adopted her older brother, and was biologically related to Annie, who was "doing really well" in the foster home. Evidence showed that Mother—through her refusal to engage in and complete court-ordered services—had not alleviated the Department's safety concerns, especially considering Mother's continued drug use. Additionally, Annie's attorney and guardian ad litem opined that termination of Mother's parental rights was in Annie's best interest.

In sum, evidence showed that Mother used PCP while pregnant with Annie, continued to use illegal drugs during the pendency of this case, refused to take drug tests the Department requested, failed to complete most of her court-ordered requirements, and did not demonstrate any excuses or explanations for her non-compliance. She did not share any plans she had for Annie's future, demonstrate any parenting abilities, or reveal any information about the stability of her housing situation. The foster family was willing to adopt Annie and raise her with her older brother, and Annie was doing well in the foster home, which served as a stable placement during the pendency of this case. While there was no evidence relating to several of the *Holley* factors, and the entirety of the record is slight, there nonetheless was clear and convincing evidence from which a factfinder could reasonably form a firm belief or conviction

11

that termination of Mother's rights was in Annie's best interest. *See E.C.R.*, 402 S.W.3d at 248. Furthermore, there was no significant contradictory evidence that would render the trial court's best-interest finding unreasonable. *See J.F.C.*, 96 S.W.3d at 266. Accordingly, we overrule Mother's second issue.

*Ineffective assistance of counsel*

In her last issue, Mother contends that she received ineffective assistance from her trial counsel who (1) failed to request a ten-minute delay of the trial so that Mother could participate, and (2) "prov[ed] up what was the State's burden" about Annie's best interest. Mother specifically contends that, as indicated towards the end of the trial transcript, she had informed her trial counsel that she was running late but the trial ended about ten minutes before she had informed counsel she would arrive. Mother contends that her counsel should have requested a ten-minute delay of the trial so that Mother could have participated in the hearing. Mother also contends that in cross-examining the Department's caseworker, her trial counsel "proved up" the Department's case by asking questions of the caseworker that elicited the following evidence: Mother's other child from a prior case resides with the foster family, and Annie and her sibling could be raised together if Annie were adopted by the foster family.

The statutory right to counsel in parental-rights termination cases includes, as a matter of due process, the right to effective counsel. *C.S.F. v. Texas Dep't of Family & Protective Servs.*, 505 S.W.3d 618, 619 (Tex. 2016) (citing *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003)). Proving ineffective assistance of counsel requires showing: (1) commission of errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment, and (2) that counsel's deficient performance prejudiced the defense—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *M.S.*, 115 S.W.3d

12

at 545 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  We must determine "whether counsel's defective performance caused harm; in other words, whether 'there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different.'"  *Id.* at 549–50 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).  "Thus, an ineffective assistance of counsel claim requires a showing of a deficient performance by counsel so serious as to deny the defendant a fair and reliable trial."  *In re J.O.A.*, 283 S.W.3d 336, 342 (Tex. 2009).  An assertion of ineffective assistance will be sustained only if the record affirmatively supports such a claim.  *Lockwood v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00062-CV, 2012 WL 2383781, at *5 (Tex. App.—Austin June 26, 2012, no pet.) (mem. op.).  The parent has the burden to prove by a preponderance of the evidence that counsel was ineffective.  *A.C. v. Texas Dep't of Family & Protective Servs.*, 577 S.W.3d 689, 707 (Tex. App.—Austin 2019, pet. denied); *In re P.M.W.*, 559 S.W.3d 215, 218 (Tex. App.—Texarkana 2018, pet. denied).

"With respect to whether counsel's performance in a particular case is deficient, we must take into account all of the circumstances surrounding the case, and must primarily focus on whether counsel performed in a 'reasonably effective' manner."  *M.S.*, 115 S.W.3d at 545.  "[C]ounsel's performance falls below acceptable levels of performance when the 'representation is so grossly deficient as to render proceedings fundamentally unfair[.]'"  *Id.* (quoting *Brewer v. State*, 649 S.W.2d 628, 630 (Tex. Crim App. 1983)).  "In this process, we must give great deference to counsel's performance, indulging 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's actions are strategic."  *Id.* (quoting *Strickland*, 466 U.S. at 689).  "It is only when 'the conduct was so outrageous that no competent attorney would have engaged

13

in it,' that the challenged conduct will constitute ineffective assistance." *Id.* (quoting *Garcia*, 57 S.W.3d at 440); *Thompson v. State*, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999)). "Ordinarily, counsel should not be condemned as unprofessional or incompetent without an opportunity to explain the challenged actions." *In re S.L.*, 188 S.W.3d 388, 395 (Tex. App.— Dallas 2006, no pet.) (citing *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002)). "Thus, when the record is silent regarding counsel's reasons for his conduct," as it is here, "we defer to counsel's decision if there is at least the possibility that the conduct could have been legitimate trial strategy." *Id.* (citing *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002)). Stated another way, if counsel "may have acted in accordance with a plausible strategy," we will not find counsel's conduct deficient. *In re L.G.R.*, 498 S.W.3d 195, 209 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

Here, neither of counsel's challenged actions or omissions rise to the level of ineffective assistance on this undeveloped record. With respect to counsel's alleged failure to request a ten-minute delay of the trial, it is plausible that Mother's trial counsel had good reason not to delay the proceedings. These plausible reasons include, for instance, the possibility that (1) Mother and her trial counsel had already determined that Mother's interests would best be served if Mother did not testify, (2) trial counsel believed that the Department's evidence was insufficient on its own to meet its burden, or (3) trial counsel had received pertinent information about Mother's fitness to testify and participate at trial that is not reflected in the record. With respect to trial counsel's allegedly deficient cross-examination of the caseworker, we initially note that the challenged evidence had already been admitted during direct examination or could have been easily inferred therefrom (e.g., that Annie and her sibling would be raised together if the foster home were to adopt Annie). Furthermore, trial counsel's questioning of the

14

caseworker could have been part of a larger strategy to pinpoint weaknesses in the Department's case. With the possibility that counsel had a plausible strategy for her cross-examination method, and without her having had the opportunity to explain her challenged actions, we must presume that her conduct fell within the range of reasonable professional assistance. *See M.S.*, 115 S.W.3d at 545.

On this record, we cannot conclude that trial counsel's performance fell outside the wide range of reasonable professional assistance or was "so grossly deficient as to render [the] proceedings fundamentally unfair." *See id.* (quoting *Brewer*, 649 S.W.2d at 630); *see also Strickland*, 466 U.S. at 669 ("A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). We accordingly overrule Mother's fourth issue.

## CONCLUSION

Having overruled Mother's issues, we affirm the trial court's final decree terminating the parental rights of Mother to her child.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed: February 5, 2020