

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-22-00015-CV

**IN THE INTEREST OF L.P.**, a Child

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-PA-00365
Honorable Susan D. Reed, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:     Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: June 22, 2022

AFFIRMED AS MODIFIED

In this case, applying Family Code section 161.001(b), the trial court terminated the parents' rights to their child L.P.[i]  Dad appeals, and he challenges the legal and factual sufficiency of the evidence for the trial court's findings on statutory grounds (D), (N), and (O), and the best interest of the child.  Although the evidence was insufficient to support the trial court's finding on ground (D), it was legally and factually sufficient to support its findings on ground (O) and the best interest of the child.  Therefore, we render judgment striking finding 7.2.1 (ground (D)) from the trial court's order, and as modified, we affirm the trial court's order.

---

[i] We use aliases to protect the child's identity.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

**BACKGROUND**

In this case, Dad is the only appellant, and we limit our recitation of the facts to those relating to Dad and the child.

In late 2018, Dad began a sexual relationship with Mom. When Mom became pregnant, and again after she delivered, Mom told Dad he was not the child's father, but Dad believed he could be. Dad knew Mom was using illegal drugs; his relationship with Mom ended shortly after Mom told him he was not the child's father.

In February 2020, when L.P. was about seven months old, she was removed into the Department's care based on Mom's ongoing illegal drug use. Mom admitted using drugs while she was pregnant with L.P., and she was struggling to remain sober. L.P. was placed in a foster-to-adopt home, where she has remained since she was removed.

The district court terminated Dad's parental rights to L.P., and Dad appealed. He challenges the legal and factual sufficiency of the evidence supporting the trial court's findings on grounds (D), (N), and (O), and L.P.'s best interest. Before we address Dad's issues, we briefly recite the applicable evidentiary and appellate review standards.

**EVIDENCE REQUIRED, STANDARDS OF REVIEW**

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691 (Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

The evidentiary standard[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal and factual[3] sufficiency standards of review. We apply those standards here.

### KNOWING ENDANGERMENT

In his first issue, Dad challenges the trial court's findings on ground (D), and we must detail our analysis for that ground. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) ("We hold that due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under subsection 161.001(b)(1)(D) or (E) of the Family Code.").

We turn to the law and the evidence pertaining to ground (D). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D).

### A.     Subsection 161.001(b)(1)(D)

Under subsection 161.001(b)(1)(D), a parent's rights to their child may be terminated if, before the child is removed, the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *see In re R.S.-T.*, 522 S.W.3d at 109 (relevant period).

However, for purposes of ground (D), we may not consider a father's acts or omissions regarding the child prior to his having knowledge of his paternity. *See In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex. App.—San Antonio 2000, pet. denied) ("[K]nowledge of paternity is a prerequisite to a showing of knowing placement of a child in an endangering environment [under ground (D)]."); *In re Stevenson*, 27 S.W.3d 195, 202 (Tex. App.—San Antonio 2000, no pet.).

**B.     Legally, Factually Sufficient Evidence**

In reviewing the evidence pertaining to ground (D), we may consider evidence of conditions or surroundings endangering the child before the child was removed. *In re R.S.-T.*, 522 S.W.3d at 109; *In re S.R.*, 452 S.W.3d at 360. But because ground (D) has specific knowledge requirements, we may not consider evidence of Dad's actions or inactions until after Dad gained knowledge of paternity. *See In re M.J.M.L.*, 31 S.W.3d at 351 (citing *In re Stevenson*, 27 S.W.3d 195, 202 (Tex. App.—San Antonio 2000, no pet.)).

In this case, Dad had some doubts about his paternity. Specifically, during Mom's pregnancy and after L.P.'s delivery, Mom told Dad he was not L.P.'s father, although Dad believed he could be. Nevertheless, the court-ordered genetic testing showed Dad was L.P.'s father, and the trial court adjudicated him to be L.P.'s father on June 24, 2021.

Because (1) L.P. was removed more than one year before Dad was adjudicated to be her father, (2) L.P. was in the Department's care from the time she was removed, and (3) there was no evidence that L.P. was endangered after she was removed, we necessarily conclude there was no evidence that Dad knowingly placed or knowingly allowed L.P. to be in conditions or surroundings which endangered her after he gained knowledge of his paternity. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *In re Stevenson*, 27 S.W.3d at 202 (citing *Djeto v. Tex. Dep't of Protective & Regulatory Servs.*, 928 S.W.2d 96, 98 (Tex. App.—San Antonio 1996, no writ)).

Therefore, the evidence was neither legally nor factually sufficient to support the trial court's finding on ground (D). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *In re R.S.-T.*, 522 S.W.3d at 109.

We sustain Dad's first issue.

**COMPLIANCE WITH COURT ORDER**

In his third issue, Dad challenges the legal and factual sufficiency of the evidence supporting the trial court's finding on ground (O). We turn to the law and the evidence pertaining to terminating Dad's parental rights for failure to comply with a specific provision of a court order.

**A.      Subsection 161.001(b)(1)(O)**

Under subsection 161.001(b)(1)(O), a parent's rights to their child may be terminated if the Department proves by clear and convincing evidence that (1) the child has been in the Department's conservatorship for at least nine months, (2) the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child," and (3) the child was "remov[ed] from the parent under Chapter 262 for the abuse or neglect of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(O); *In re K.N.D.*, 424 S.W.3d 8, 9–10 (Tex. 2014) (per curiam); *In re E.C.R.*, 402 S.W.3d 239, 248–49 (Tex. 2013).

**B.      No Objection to Service Plan**

In his brief, Dad twice asserts that he "should not have been required to complete a service plan," but his assertion has at least two fatal flaws.

First, Dad failed to preserve his claim of error. *See* TEX. R. APP. P. 33.1(a)(1); *In re B.L.D.*, 113 S.W.3d 340, 345 (Tex. 2003). In his Family Plan, on the "Parent(s) Acknowledgement" page that Dad signed, it advised him that the trial court would review the plan and that he could "request a review or change of this plan . . . at any time." And in its subsequent permanency hearing order, the trial court stated it had reviewed Dad's service plan, approved it, incorporated it into the order, and made Dad's plan an order of the court. But the record does not show that Dad raised his complaint with the trial court. *See* TEX. R. APP. P. 33.1(a)(1); *In re B.L.D.*, 113 S.W.3d at 345; *In re S.A.S.*, 200 S.W.3d 823, 829–30 (Tex. App.—Beaumont 2006, pet. denied).

Second, Dad's twice-repeated assertion is presented without any analysis or citations to supporting authorities. *See* TEX. R. APP. P. 38.1(i); *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Failure to cite legal authority or to provide substantive analysis of the legal issues presented results in waiver of the complaint.").

Thus, Dad's assertion on appeal that he "should not have been required to complete a service plan" affords him no appellate relief.

## C.     Child Removed for Abuse or Neglect

Dad concedes that L.P. was in the Department's care for more than nine months, and he does not argue that he complied with the court-ordered service plan. But he insists that L.P. was not removed for any abuse or neglect because when the Department took L.P. into care, she had been in a parent-child safety placement. However, Dad's argument is not availing because, inter alia, it overlooks key facts.

The Department's evidence in support of removal included an affidavit stating that, after L.P. was born, the Department received two referrals for Mom's substance abuse. *Cf. In re E.C.R.*, 402 S.W.3d at 248 (recognizing that a removal affidavit may not be "evidence for all purposes," but it may be used to "show[] what the trial court relied on in determining whether removal was justified"). During the Department's investigation, Mom admitted to an ongoing history of using heroin and methamphetamines.

Because of her struggle with drug abuse, Mom arranged for a friend to care for L.P., but after about two months, the caregiver did not want to care for L.P. any longer. When the Department and Mom were at the caregiver's home to pick up L.P., the Department asked Mom for an alternative caregiver, but she did not provide any. Given the caregiver's cessation of care, Mom's admitted ongoing substance abuse, and no other family member to care for L.P., the Department took L.P. into care.

After L.P. was removed, the trial court held a full adversary hearing, and it found that "there [was] sufficient evidence to satisfy a person of ordinary prudence and caution that . . . there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession."

Thus, the evidence and the trial court's findings conclusively establish that L.P. was removed from Mom's care under Chapter 262 for abuse or neglect. *See id.*; *D.F. v. Tex. Dep't of Family & Protective Servs.*, 393 S.W.3d 821, 830 (Tex. App.—El Paso 2012, no pet.) (noting that, for purposes of Chapter 262, a child may be removed from a parent for abuse or neglect even though the child "may have been physically in the care of a relative, a medical or social services institution, or the Department").

Therefore, we conclude the Department met its burden to prove that Dad's course of conduct met the requirements of ground (O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O); *In re E.C.R.*, 402 S.W.3d at 248–49.

### D.      Subsection 161.001(d)

Although the Department met its burden to prove ground (O), Dad could still raise an affirmative defense. *See In re Y.M.L.*, No. 04-19-00168-CV, 2020 WL 1695498, at *3 (Tex. App.—San Antonio Apr. 8, 2020, pet. denied) (mem. op.). He could avoid termination of his parental rights under subsection 161.001(b)(1)(O) if he "prove[d] by a preponderance of evidence that [he] was unable to comply with specific provisions of the court order; and [he] made a good faith effort to comply with the order and [his] failure to comply with the order is not attributable to any fault of [his]." *See* TEX. FAM. CODE ANN. § 161.001(d); *accord In re Y.M.L.*, 2020 WL 1695498, at *3; *In re E.F.*, 591 S.W.3d 138, 144 (Tex. App.—San Antonio 2019, no pet.).

**E.      Adequate Time to Complete Service Plan**

Dad does not argue that he completed his service plan; instead, he argues that he did not have enough time to complete his plan, but he did not meet his burden to prove his affirmative defense.

After receiving the genetic testing results, the trial court adjudicated Dad to be L.P.'s father on June 24, 2021, and Dad signed his service plan on July 9, 2021. The court's permanency hearing order, which incorporated Dad's service plan, required Dad to, inter alia, obtain, maintain, and provide proof of his own housing; participate in the MELD Parenting Program; complete a drug assessment and participate in random drug testing; complete a psychological examination and participate in any subsequent individual counseling; and participate in scheduled visits with L.P.

Department representatives testified that Dad did not complete the MELD Parenting Program or drug assessment, he did not provide proof of housing, he did not attend his individual counseling, and he attended only about one-fourth of his scheduled visits with L.P.

In response, Dad's brief points out that one of the Department case workers opined that five months was not enough time for Dad to complete his service plan, but the case worker's opinion does not satisfy the essential elements of the statutory affirmative defense. *See* TEX. FAM. CODE ANN. § 161.001(d); *In re Y.M.L.*, No. 04-19-00168-CV, 2020 WL 1695498, at *3 (Tex. App.—San Antonio Apr. 8, 2020, pet. denied) (mem. op.).

Dad's burden was to prove that (1) he could not comply with specific provisions of the order, (2) he made good faith efforts to comply with those provisions, and (3) his failure to comply was not his fault. *See* TEX. FAM. CODE ANN. § 161.001(d); *In re Y.M.L.*, 2020 WL 1695498, at *3. However, Dad does not (1) identify which specific provisions he could not comply with; (2) point to any evidence showing that he made good faith efforts to complete his ordered services, i.e.,

parenting classes, proof of housing, individual counseling; or (3) otherwise prove that his admitted failures to complete the ordered services were not his fault. *See* TEX. FAM. CODE ANN. § 161.001(d); *In re Y.M.L.*, 2020 WL 1695498, at *4; *In re E.F.*, 591 S.W.3d at 144.

Therefore, we conclude the trial court could have found that Dad failed to meet his burden to prove his affirmative defense. *See* TEX. FAM. CODE ANN. § 161.001(d); *In re Y.M.L.*, 2020 WL 1695498, at *4; *In re E.F.*, 591 S.W.3d at 144.

### F.  Sufficient Evidence of Ground (O)

Having reviewed the evidence under the respective standards, we conclude it was legally and factually sufficient to support the trial court's finding under subsection 161.001(b)(1)(O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O); *In re M.C.L.*, No. 04-21-00277-CV, 2022 WL 219002, at *3 (Tex. App.—San Antonio Jan. 26, 2022, no pet.). We further conclude that Dad failed to establish his affirmative defense. *See* TEX. FAM. CODE ANN. § 161.001(d); *In re E.F.*, 591 S.W.3d at 144. Thus, the Department met its burden under section 161.001(b)(1) to prove a statutory ground finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(1); *In re E.C.R.*, 402 S.W.3d at 248–49.

### G.  Second issue Moot

Because only a single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support terminating a parent's rights to their child under section 161.001, *In re M.P.*, 639 S.W.3d 700, 702 (Tex. 2022) (per curiam); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003), we need not address Dad's second issue—challenging ground (N), *see* TEX. R. APP. P. 47.1; *In re M.P.*, 639 S.W.3d at 702.

We overrule Dad's third issue; his second issue is moot.

## BEST INTEREST OF THE CHILD

In his fourth issue, Dad argues the evidence was legally and factually insufficient to support the trial court's finding that terminating his parental rights was in L.P.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

### A.    Best Interest of the Child Factors

The Family Code statutory factors[4] and the *Holley* factors[5] for best interest of the child are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interest of the child.

We also consider the evidence we recited above pertaining to ground (D) as we now review the best interest of the child under section 161.001(b)(2). *See In re C.H.*, 89 S.W.3d at 28 (noting that the same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2)); *In re D.M.*, 452 S.W.3d at 471.

The trial court heard the following testimony.

### B.    Child's Age and Vulnerabilities

At the time of trial, L.P. was about two and one-half years old, she was unable to care for herself, and she had significant health challenges. L.P.'s health challenges include a chromosomal defect and multiple special needs.

To treat these special needs, L.P. is under the ongoing care of various specialists including a neurologist, gastroenterologist, geneticist, otolaryngologist, orthotist, allergist, audiologist, developmental specialist, physical therapist, and occupational therapist. To treat her hypotonia, she was prescribed ankle braces to help her walk, and she requires ongoing occupational and physical therapy. Her otolaryngeal, neurological, gastric, and allergic issues are being treated by the respective specialists, and her developmental delays are being addressed by a developmental

specialist.  *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (6), (8), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D)).

## C.       Indicia of Parent-Child Relationship

In April 2020, the first legal case worker tried to contact Dad to advise him that he was an alleged father, but Mom did not provide contact information for Dad, and the case worker was unable to locate Dad.  After the case worker located Dad's mother, the case worker asked her for Dad's contact information.  A few days later, in February 2021, Dad called the Department.

The case worker told Dad there was an open case involving a child which might be his.  But Dad chose not to participate in services until he got genetic test results, and he did not separately arrange for private genetic testing from the time L.P. was born until the court ordered genetic testing.  In the June 2021 test results, the court-ordered genetic testing confirmed Dad was L.P.'s father.

After the Department received the results, it arranged for Dad to visit L.P.  Dad visited L.P. three times in July, once at the beginning of August, and then he stopped visiting her for a few months.  During the first case worker's tenure, which ended on October 8, 2021, Dad visited L.P. four out of twenty-four available visits.  Of the twenty visits he missed, for three of those, Dad confirmed that he would visit, but at the last minute, he cancelled.  The first case worker testified that Dad's contact with L.P. "was very short [and he did not] believe it was to a point where [L.P.] established that connection [to Dad] as a father figure."

The current case worker took over on October 8, 2021.  From then until trial on December 7, 2021, Dad had eight or nine visits scheduled, and he attended three.  *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (10), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (I)).

**D.      Providing for Child's Needs**

The current case worker testified that Dad has not demonstrated he can provide a safe and stable environment for L.P. based on the following facts.

Dad is not married; he is living with his girlfriend of eighteen months. Dad said they have lived in the same home for four months, but Dad did not provide the case worker with proof of housing. Dad is not currently employed, but because he has a learning disability and recurring seizures, he is receiving Social Security Disability payments of $794 per month. He has not completed his court-ordered services, and he has not been consistent in visiting L.P. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (10), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H), (I)).

**E.      Child's Placement**

The first case worker testified that the foster parents provide L.P. with an excellent level of care, they are very knowledgeable about all her special needs, and she has "an extreme attachment to her foster parents and being in that home." The first case worker also felt it would be in L.P.'s best interest to remain with the foster family "because that is the home she had been in over the past two years. She is with her younger sibling in that home, and I believe it would be detrimental for [L.P.] should she be removed."

The current case worker confirmed that L.P. is placed in the same home with her half-sister, and L.P. is very bonded to her foster parents. The foster parents are ensuring L.P. keeps all her appointments and they are providing for all of L.P.'s needs. The foster parents are very strongly bonded to L.P., L.P. is strongly bonded to them and to her baby sister, and the foster parents want to adopt L.P. and her baby sister. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G)).

**F.       Ad Litem's Recommendation**

The child's ad litem confirmed that L.P. is very bonded to her foster family and her half-sister, she is doing well in the placement, and the foster family is better able to meet L.P.'s needs and provide her with a safe and stable home.  *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

**G.       Sufficient Evidence on Best Interest Finding**

As the fact finder, the trial court could have believed that Dad's extended delay in determining whether he was L.P.'s father, his prolonged failure to intervene to protect L.P. while Mom was using illegal drugs, his initial refusal to engage in services, his failure to complete his ordered services during the time he was subject to the orders, his failure to demonstrate safe and stable housing for L.P., and his only intermittent visits to L.P. showed his lack of commitment to L.P. and that he would not be able to provide the extreme level of support for her many special needs.  *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

The trial court could also have believed that the foster parents were successfully providing the extreme level of support to meet L.P.'s many special needs now and would continue to do so in the future.  *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have reasonably formed a firm belief or conviction that it was in L.P.'s best interest for Dad's parental rights to be terminated.  *See In re H.R.M.*, 209 S.W.3d at 108 (citing *In re C.H.*, 89 S.W.3d at 25).  Therefore, the evidence was legally and factually sufficient to support the trial court's best-interest-of-the-child finding.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Dad's fourth issue.

## CONCLUSION

Having reviewed the evidence under the applicable standards, we conclude it was insufficient to support the trial court's finding on ground (D), but it was legally and factually sufficient to support the trial court's findings on ground (O) and the best interest of the child.

Therefore, we render judgment striking finding 7.2.1 (ground (D)) from the trial court's order, and as modified, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[1] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[2] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Dad's course of conduct met subsections (D), (N), and (O):

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
> . . . .
> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
> (i) the department has made reasonable efforts to return the child to the parent;
> (ii) the parent has not regularly visited or maintained significant contact with the child; and
> (iii) the parent has demonstrated an inability to provide the child with a safe environment; [and]
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1).

[3] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[4] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

> (1) the child's age and physical and mental vulnerabilities;
> (2) the frequency and nature of out-of-home placements;

(3)    the magnitude, frequency, and circumstances of the harm to the child;

(4)    whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5)    whether the child is fearful of living in or returning to the child's home;

(6)    the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7)    whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8)    whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9)    whether the perpetrator of the harm to the child is identified;

(10)    the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11)    the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12)    whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

    (A) minimally adequate health and nutritional care;

    (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

    (C) guidance and supervision consistent with the child's safety;

    (D) a safe physical home environment;

    (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

    (F) an understanding of the child's needs and capabilities; and

(13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[5] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

    (A) the desires of the child;

    (B) the emotional and physical needs of the child now and in the future;

    (C) the emotional and physical danger to the child now and in the future;

    (D) the parental abilities of the individuals seeking custody;

    (E) the programs available to assist these individuals to promote the best interest of the child;

    (F) the plans for the child by these individuals or by the agency seeking custody;

    (G) the stability of the home or proposed placement;

    (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

    (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).